**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Tommy KEMPER, Defendant-Appellant.**

**No. 74–1020.**

United States Court of Appeals, Sixth Circuit.

Argued April 17, 1974.

Decided Sept. 20, 1974.

Certiorari Denied Jan. 30, 1975. See 95 S.Ct. 810.

**328**

Arthur L. Brooks, Lexington, Ky., on brief, for defendant-appellant.

Eugene E. Siler, Jr., U.S. Atty., Lexington, Ky., on brief, for plaintiff-appellee; Kenneth P. Glover, Office of Regional Counsel, Bureau of Alcohol, Tobacco and Firearms, Cincinnati, Ohio, of counsel.

Before McCREE, MILLER and ENGEL, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

This is an appeal by the defendant, Tommy Kemper, from a conviction on Count 2 of a three count indictment charging him with violation of 18 U.S.C. § 922(g). (Transporting a firearm in interstate commerce after having been convicted of a felony.)[1]

The defendant raises two issues on appeal: (1) whether the district court erred in refusing to strike from the indictment language descriptive of the nature of the felony for which he had been convicted despite his willingness to stipulate the prior conviction in the statutory language; and (2) whether the district court erred in refusing to grant a motion to suppress the introduction in evidence of a firearm seized by the police from defendant's vehicle.

The indictment was worded as follows:

### COUNT 1

(T. 18 Appendix, Sec. 1202 (a)(1), U.S.C.)

THE GRAND JURY CHARGES:

That on or about the 30th day of April, 1973, in Madison County, in the Eastern District of Kentucky TOMMY KEMPER having been convicted of a felony by a court of the United States, that is, the United States District Court for the Southern District of California, on or about the 29th day of November, 1943, of the felony crime of interstate transportation of a female for the purpose of having her practice prostitution and for other immoral purposes, received, possessed, and transported in commerce and affecting commerce a firearm, that is, a Rossi .32 caliber revolver, in violation of Title 18 Appendix, Section 1202(a)(1), United States Code.

### COUNT 2

(T. 18 Sec. 922(g), U.S.C.)

THE GRAND JURY FURTHER CHARGES:

That on or about the 30th day of April, 1973, TOMMY KEMPER having been convicted of a crime punishable by imprisonment for a term exceeding one year, that is, the inter-

---

1. Count 1 was dismissed before trial and defendant was found not guilty on Count 3. He was given a sentence of 2 years.

state transportation of a female for the purpose of having her practice prostitution and for other immoral purposes on or about the 29th day of November, 1943, by the United States District Court for the Southern District of California, did transport a firearm, that is, a Rossi .32 caliber revolver, from Valdosta, in the State of Georgia, to Madison County, in the Eastern District of Kentucky.

### COUNT 3

(T. 18 Sec. 922(i), U.S.C.)

THE GRAND JURY FURTHER CHARGES:

That on or about the 30th day of April, 1973, TOMMY KEMPER did unlawfully transport a stolen firearm, that is, a Rossi .32 caliber revolver, in interstate commerce, from Valdosta, in the State of Georgia, to Madison County, in the Eastern District of Kentucky, knowing and having reasonable cause to believe that the firearm was stolen.

Because of the similarity between Counts 1 and 2, the government was required to elect between them; upon the prosecution's election to proceed on Count 2, Count 1 was dismissed. The trial court denied the defendant's motion to strike as surplusage the language in Count 2 describing the nature of the defendant's prior felony conviction. It is urged on appeal that this language should not have been placed before the jury because it was prejudicial in the eyes of the jurors and was not required to define the statutory offense under 18 U.S.C. § 922(g).

Rule 7(d) of the Federal Rules of Criminal Procedure makes the striking of surplusage permissive but not mandatory.[2] The Rule is properly invoked when an indictment contains non-essential allegations that could prejudicially impress the jurors. The striking of language from an indictment as being surplusage addresses itself to the sound discretion of the district court. Dranow v. United States, 307 F.2d 545, 558 (8th Cir. 1962). The granting of such a motion is proper, however, only where the words stricken are not essential to the charge.

In the case before us, the material which was requested to be stricken was not a necessary element of the statutory offense in light of the defendant's willingness to stipulate to the prior conviction itself.[3] It should suffice for the indictment to contain language simply stating that defendant had previously been convicted in a specified court of a crime punishable by imprisonment for a term exceeding one year, omitting language descriptive of the offense.

Although the standard under Rule 7(d) has been strictly construed against striking surplusage,[4] a serious question would arise on the facts presented here, in light of the offer to stipulate, that the district court abused its discretion in denying the motion to strike the objectionable details. The particular factual circumstances attending the prior conviction and those of the present case would appear to make the recitation to the jury in the indictment of the detailed description of the prior conviction peculiarly prejudicial. Defendant was previously convicted of the "interstate transportation of a female for the purpose of having her practice prostitution and other immoral purposes." In the present case the defendant's companion

2. Rule 7(d) provides: Surplusage. The court on motion of the defendant may strike surplusage from the indictment or information.

3. A different question would be presented if there was no offer to stipulate to the prior felony conviction, and the government was therefore forced to prove such conviction by reliance upon a prior judgment containing a statement of the conviction inextricably interwoven with descriptive details of the offense. Indeed, if the defendant should not be willing to stipulate to the prior conviction, he could *require* the prosecution to prove such conviction by the prior record or judgment of conviction.

4. See 1 Wright, Federal Practice and Procedure § 127 (1969).

accused him of detaining her against her will by threatening her with a gun. The basis for defendant's defense against the charge of interstate transportation of a weapon was that he did not know that the gun was in the vehicle until he saw it in the possession of his companion who, he claims, accompanied him of her own free will. As this testimony was essentially conflicting, the jury's verdict was necessarily based on a weighing of the credibility of the defendant and his companion. It cannot be doubted that information that defendant had previously been convicted of transporting a woman in interstate commerce for purposes of prostitution, in the present context, would weigh heavily against the defendant in resolving such credibility issue.[5]

▮ Nevertheless, we are convinced that the refusal to strike from the indictment the challenged language, if error, did not affect the substantial rights of the defendant and therefore is not ground for reversal. Rule 52 F.R.Cr.P.; Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). This is true because the jury was properly made fully aware of both the fact and the nature of the prior conviction when the defendant was cross-examined with reference to it for purposes of impeachment. Defendant does not contend that he would have exercised his constitutional right not to testify if the court had granted his motion to strike.

▮ The impeachment of a defendant by eliciting prior felony convictions is proper. The only limitation on such impeachment is that the prior conviction must be for a felony or crime involving

moral turpitude. Henderson v. United States, 202 F.2d 400 (6th Cir. 1953) rehearing denied 204 F.2d 126. The fact that the prior conviction in this case was 30 years old would only go to its weight not to its admissibility. United States v. Bell, 351 F.2d 868 (6th Cir. 1965). It is proper for a trial judge in his sound discretion to prohibit detailed consideration upon cross-examination of a defendant's involvement in other crimes. United States v. Marchesani, 457 F.2d 1291, 1297 (6th Cir. 1972). Yet we do not find that the trial judge in this case abused his discretion in allowing information as to the fact and nature of the prior felony conviction (the same prior conviction described in Count 2 of the indictment) to be placed before the jury for impeachment purposes. The court carefully instructed the jury that the prior conviction could be considered only for impeachment and not as substantive evidence.[6]

Defendant's second charge of error lies in the district court's denial of his motion to suppress evidence allegedly obtained by an unreasonable search and seizure in violation of the fourth amendment.

On April 30, 1973, two officers of the Berea, Kentucky police department, received a radio message from the Kentucky state police to be on the lookout for a blue Ford traveling north on Interstate 75, bearing Georgia license tag, and having four occupants. The communication also indicated that there was a woman passenger in the vehicle, Miriam Johnson, who was being detained against her will, possibly at gunpoint. The officers set up a surveillance on Interstate 75

5. In Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), the Court refused to hold that it was a denial of due process to include prior convictions in the indictment to be proved for sentencing purposes where proper precautionary instructions were given by the court. While the opinion seems to imply that there may be a preference for a different procedure in the federal courts over which there is supervisory control, this would not seem to be constitutionally compelled. United States v.

Craven, 478 F.2d 1329 (6th Cir.), cert. den., 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973), relied on by the prosecution, involved merely the presumption of innocence of the defendant under the firearms statute.

6. We are not bound by the stricter rules of the state of Kentucky with respect to impeachment by prior convictions. See e. g., Iles v. Commonwealth, 476 S.W.2d 170 (1972); Cotton v. Commonwealth, 454 S.W. 2d 698 (1970).

and around 4:30 A.M. observed defendant's vehicle matching the radio description traveling north on Interstate 75. It was stopped, and although there were only two occupants instead of four, the name given by the woman passenger corresponded with the radio report.

Upon being stopped, defendant began to walk to the patrol car and was ordered to stop by one of the officers. He was apparently patted down for a weapon, his driver's license examined, and he was asked to have a seat in the back seat of the patrol car. It is in dispute whether defendant Kemper was ever formally arrested at this time, but it is clear that he was to some extent in a custodial situation.

The officers found Mrs. Johnson in a distressed state and reported that she stated "he is going to kill me." She informed the officers that Kemper had a gun in the trunk of the car. They then contacted the state police by radio and verified the description of the car and the name of the female passenger.

The keys to the trunk were obtained by one of the officers from the ignition, the trunk was searched, and a pistol was found.[7] The officers had no search warrant. Kemper, at the request of one of the officers, and accompanied by him, drove his car to Berea. He was later charged with the offenses set forth in the indictment. Apparently the Johnson woman was driven to Berea by the other officer in the patrol car.

While it is accepted that warrantless searches of automobiles may be valid in situations where the same search of a dwelling without a warrant would be unconstitutional,[8] the precise parameters of the "automobile exception" are not clearly defined.[9] The more lenient rule for automobiles was first stated in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). There the Court interpreted the fourth amendment to permit warrantless searches of moveable vehicles where officers had reason to believe that they contained contraband which might be lost before a warrant could be obtained. While it could initially have been said that *Carroll* is applicable to the search for and seizure of contraband only, the demise of the "mere evidence" rule in Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), would suggest that the distinction between contraband and instrumentalities, on the one hand, and mere evidence on the other, would no longer be a valid limitation on the automobile exception. In *Warden,* police in "hot pursuit" of a suspected robber were searching a house for the man or money and found clothing of the accused which was later admitted in evidence. The Court found the application of the fourth amendment's requirements to be the same for "mere evidence" as for fruits, instrumentalities, or contraband. *Id.* at 306, 307, 87 S.Ct. 1642.[10]

Although Mr. Justice White in his separate opinion in Coolidge v. New Hampshire, 403 U.S. 443, 510, 519, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) felt that the Court had revived the distinction between contraband and mere evidence put aside by *Warden,* Mr. Justice Stewart in *Coolidge* correctly pointed out that in that case the car had been

---

7. There is disputed testimony as to whether Kemper consented to the search of the trunk.

8. Chambers v. Maroney, 399 U.S. 42, 52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

9. *See* Note, "Warrantless Searches and Seizures of Automobiles," 87 Harvard Law Review 835 (1974) *quoting* Mr. Justice Rehnquist in Cady v. Dombrowski, 413 U.S. 433, 440, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973): "[T]his branch of the law is something less than a seamless web."

10. The distinction between mere evidence and contraband has been disregarded with respect to automobile searches in several Courts of Appeals' decisions. *See e. g.,* United States v. Mahler, 442 F.2d 1172, 1175 (9th Cir.) cert. den., 404 U.S. 993, 92 S.Ct. 541, 30 L.Ed.2d 545 (1971); United States v. Jackson, 429 F.2d 1368, 1372 (7th Cir. 1970); *but see* United States v. Menke, 468 F.2d 20, 23 (3rd Cir. 1972); United States v. Miles, 445 F.2d 974, 975 (5th Cir.) cert. den., 404 U.S. 912, 92 S.Ct. 231, 30 L.Ed.2d 185 (1971).

parked for some time at the defendant's house and there was ample time to obtain a warrant. Thus, the fact that an automobile was involved did not automatically validate the search. *Id.* at 461–462, 91 S.Ct. 2022. Unlike the situation of a car stopped on an open highway, a car in a home garage does not present the same exigent circumstances that would support a warrantless search. The Court in *Coolidge* states that "no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' " *Id.* at 468, 91 S. Ct. at 2039.

A definition of the "exigent circumstances" necessary to justify a warrantless automobile search is also lacking in precision. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), however, provides insight into the requirements. In *Chambers* four men were arrested after the car in which they were riding was stopped by police shortly following the armed robbery of a service station. The arrests were the result of information provided by the service station attendant and other witnesses. The car was driven to a police station where it was searched without a warrant, resulting in the discovery of two guns and cards bearing the name of another service station robbed a week earlier.

The *Chambers* Court held the search at the police station valid upon the theory that the car could have been searched on the spot when stopped since "there was probable cause to search [the car] and it was a fleeting target for a search." *Id.* at 52, 90 S.Ct. at 1981. There was, as the Court reasoned, little practical difference "between an immediate search without a warrant and the car's immobilization until a warrant [could be] obtained." *Id.* The Court discussed both the impracticability of following the car and searching it later and the danger of leaving it abandoned on the highway. The probable cause in *Chambers* was supplied by the police being informed that the robbers, dressed as those who were stopped, fled carrying guns and fruits of the crime in a car

matching the description of the car stopped.

Unable to conclude that immobilizing the car until a search warrant could be obtained was a lesser intrusion into the suspect's rights than immediately searching the car to determine if further action was necessary, the Court stated that there is "no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." 399 U.S. at 52, 90 S.Ct. at 1981. Thus in *Chambers* the exigent circumstances found to exist were sufficient to justify the search even after the car was safely in the police station.

█ In the case at hand both the probable cause and exigent circumstances requirements needed to justify a search of the automobile without a warrant were obviously present. The officers had probable cause to believe that evidence or the instrumentalities of a crime could be found in the trunk of Kemper's car. They had received a state police radio report that a car matching the description of the car Kemper was driving would be traveling north on Interstate 75 carrying a named woman being detained against her will, probably at gunpoint. A check of the license plate and the name of Kemper's companion confirmed that this was the same vehicle. The Johnson woman appeared distressed and frightened for her life and informed the police that Kemper had a gun in the trunk. While there was no reason to know that Kemper was a convicted felon (which would make the mere interstate transportation of the weapon a crime) there was probable cause to believe that a gun was in the car and that it had been used in detaining the woman passenger against her will, thus making it an instrumentality or at least evidence of a crime. The fact that the gun turned out to be contraband or evidence of another crime does not weaken the probable cause to

search for the gun as an instrumentality of the kidnapping.

In like manner the facts of this case present the "exigent circumstances" closely akin to those found in *Chambers* to be adequate to justify an immediate warrantless search. The car was located on a stretch of highway outside of town where its abandonment would not have been safe. There existed a danger of evidence being lost or destroyed if not immediately acquired. It would be an unnecessary and unreasonable burden to require one of the officers to remain with the car isolated on the highway while the other returned to town for a warrant.[11] The fact situation in this case should be considered in light of the fact that the transaction took place at 4:30 in the morning near a small town and that the accessibility of a magistrate for obtaining a search warrant may have been rather remote. Detaining Kemper until morning may have been more unreasonable than a search on the spot to confirm or refute the probable cause.

As pointed out in Schneckloth v. Bustamonte, 412 U.S 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), such an immediate search may even serve to be less of an imposition on the suspect: "If the search is conducted and proves fruitless, that in itself may convince the police

that an arrest with its possible stigma and embarrassment is unnecessary, or that a far more extensive search pursuant to a warrant is not justified." *Id.* at 228, 93 S.Ct. at 2048.[12]

■ Viewing the factual circumstances as a whole, it cannot be said that the trial judge erred in failing to grant the motion to suppress as evidence the firearm seized from defendant's car.

Affirmed.

---

11. A number of Courts of Appeals have found exigent circumstances sufficient to justify a warrantless search of an automobile trunk. *See, e. g.,* Dodd v. Beto, 435 F.2d 868 (5th Cir. 1970), cert. den., 404 U.S. 845, 92 S.Ct. 145, 30 L.Ed.2d 81 (1971) (officer who was informed that defendant had been concealing a gun near a store and had driven away in an automobile was held to have both probable cause to believe defendant had committed the theft and grounds to search the trunk where the officer spotted seemingly stolen goods on the back seat.); United States v. Garner, 451 F.2d 167 (6th Cir. 1970) (officers finding gun in car of defendant who had been evasive in trying to elude them were held to have probable cause and a duty to search the trunk of the car.); United States v. Chapman, 474 F.2d 300 (5th Cir.), cert. den., 414 U.S. 835, 94 S.Ct. 179, 38 L.Ed.2d 71 (1973) (probable cause and the necessary exigent circumstances to justify trunk search were found to exist where police stopped car on the highway to

make a warrant arrest and found a handgun in the accompanying exploratory inspection where there was also particularized and well grounded information that the car was used in a burglary and that it contained instrumentalities and fruits of the crime.) *Compare* United States v. Lawson, 487 F.2d 468 (8th Cir. 1973) (inventory search of locked trunk while car was in police custody was held improper and the gun so obtained inadmissible in the prosecution of charges of unlawful transportation of a gun in interstate commerce by a convicted felon.)

12. The Court in a footnote stated that if there had been probable cause then a search warrant would not have been necessary, without discussing what facts would constitute exigent circumstances. Cases such as this may be an indication of a relaxation of the requirement for exigent circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 228, n. 10, 93 S.Ct. 2041, 36 L.Ed.2d 854.