**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Billy Ray KIDWELL,
Defendant-Appellant.**

**No. 74–2307.**

United States Court of Appeals,
Sixth Circuit.

July 11, 1975.

Lawrence I. Messmer, Newport, Ky. (Court appointed), for defendant-appellant.

Eugene E. Siler, Jr., U. S. Atty., Richard E. Duerr, Jr., Asst. U. S. Atty., Lexington, Ky., for plaintiff-appellee.

Before MILLER and ENGEL, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

PER CURIAM.

This appeal is from a judgment of conviction against Billy Ray Kidwell for knowingly possessing a single barrel sawed-off shotgun, not registered under the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5861(d) and 5871.[1] The sole issue on appeal is whether the district court should have granted defendant's motion to suppress the shotgun as evidence on the ground that it was obtained as the result of an illegal search and seizure.[2]

The material facts may be stated as follows. On the night of July 9, 1973, agents of the Alcohol, Tobacco, and Firearms Division of the Department of the Treasury set up a surveillance in a certain section of Newport, Kentucky, in conjunction with the Kentucky state police. The basis for this action was information from a previously reliable informant that defendant had been seen carrying sawed-off shotguns between an apartment in the area and a white Cadillac parked in front of the apartment. The surveillance began around 7:00 P.M. and at approximately 8:00 P.M. defendant was observed driving a white 1962 Cadillac with one Royce as a passenger.[3] Defendant and Royce subsequently were observed around 9:45 on the same night looking into the trunk of the car. Having noticed that the temporary license tag on the Cadillac had expired, the agents approached defendant and Royce, identified themselves, and sought to determine the ownership of the automobile. Defendant, while claiming ownership, was unable to produce any proof of such ownership. Defendant then asked Royce to return to the apartment to obtain his automobile registration certificate. Two agents accompanied Royce toward the apartment but when they reached the residence Royce refused to go in with the agents without defendant's permission. The three men then returned to the car.

At this point a Newport police cruiser stopped to investigate what was going on.[4] One of the Newport officers recognized the defendant as being wanted for a violation in the City of Newport— "having jumped bond or something to that effect." Defendant was then arrested on the Newport charge and advised of his rights. He was handcuffed and placed in the Newport police cruiser. Since defendant claimed ownership of

---

1. Defendant was tried under a two-count indictment also charging possession of a second sawed-off shotgun. The jury returned a verdict of "not guilty" on this second count of the indictment.

2. Upon a hearing held to determine the merits of defendant's motion to suppress the two shotguns the district court overruled the motion, concluding that the search was made incident to a lawful arrest.

3. Royce was charged in the indictment as a co-defendant with Kidwell. However, Royce did not appear for trial and bond was forfeited.

4. There is testimony that the Newport police were not summoned by the federal officers or the state police and there is no evidence that their arrival at this time was more than a mere coincidence.

the Cadillac the state police directed that it be impounded and that an inventory search be made of its contents.

At approximately the same time that the inventory search was being initiated, Royce was standing next to two of the federal agents, one of whom told him that the reason for the agents' being there was that they had received information that Royce and defendant were carrying sawed-off shotguns between the apartment and the car. To this Royce responded "you will probably find one under the front seat of the car." An agent then walked over to the front door of the Cadillac as the state police detective was opening the door to initiate the inventory search. The agent reached under the front seat and pulled out a sawed-off shotgun for possession of which defendant was subsequently convicted.

After the gun was found under the front seat, it was discovered that Royce had been presenting a false identification and it was learned that he too was wanted on a city charge similar to the one for which defendant had been arrested. Royce was then arrested on the city charge and advised of his rights.

At this point Royce requested that he be allowed to return to the apartment to obtain a shirt and his shoes. This was permitted but both federal and local officers accompanied him. As Royce and the officers stepped into the apartment, another sawed-off shotgun was seen on a table in or near a hallway. This gun was also seized.[5] Royce and defendant were then taken to the Newport City Jail where federal agents, several days later, arrested defendant on the federal firearms charge.

In reviewing the validity of the search of the automobile, the record in this case demonstrates that both probable cause and exigent circumstances were present, thus justifying the search without a warrant. *Cady* v. *Dombrowski*, 413 U.S. 433, 439, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *Coolidge* v. *New Hampshire*, 403 U.S. 443, 468, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Chambers* v. *Maroney*, 399 U.S. 42, 48, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll* v. *United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *United States* v. *Kemper*, 503 F.2d 327 (6th Cir. 1974).

The basis for the surveillance of defendant was a tip from an informer who had been reliable in the past that defendant had been carrying sawed-off shotguns between an apartment and a white Cadillac. The federal and state officers corroborated this information by conducting a surveillance resulting in their observing the defendant driving a white Cadillac near the apartment and in his opening and looking into the trunk of the car. While this, standing alone, may have been insufficient to establish probable cause for believing a gun was to be found in the car, this knowledge clearly ripened into probable cause when Royce made the unsolicited statement that a sawed-off shotgun would probably be found under the seat. *United States* v. *Isham*, 501 F.2d 989 (6th Cir. 1974).

Once the existence of probable cause to believe that a gun was in the car has been established, it is a sufficient showing of "exigent circumstances" to demonstrate that the officers "had reasonable grounds to seize it for their own self-protection within the *Terry*[6] rationale." *United States* v. *Isham*, 501 F.2d 989 (6th Cir. 1974). In this case, the fact that Royce, the other suspect, was not yet restrained, and could possibly have reached the weapon, brings this case within the ambit of *Isham*.

It further appears in this case that if the shotgun had not been discovered by the federal agent, it would have been found in the course of the inventory search by the state and local officers. While inventory searches upon impoundment have been upheld by the Supreme

---

5. Defendant was found "not guilty" on the count charging possession of the shotgun found in the apartment. The legality of the search of the apartment is not before us.

6. *Terry* v. *Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Court, *Cady* v. *Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), it is not necessary to consider the application to this case of that exception to the warrant requirement.

Finding that the search here involved was reasonable under existing case law, we conclude that the judgment of the district court must be

Affirmed.