**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Anthony WILLIAMS,
Defendant-Appellant.**

**No. 75–1347.**

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 30, 1975.

Decided Dec. 9, 1975.

John C. Turin, Van Gunten, Turin & Co., Sylvania, Ohio (court-appointed), for defendant-appellant.

Frederick M. Coleman, U. S. Atty., James Dean Jensen, Toledo, Ohio, for plaintiff-appellee.

Before McCREE, LIVELY and ENGEL, Circuit Judges.

LIVELY, Circuit Judge.

This appeal from a jury conviction of willfully and knowingly possessing an unregistered sawed-off shotgun in violation of 26 U.S.C. § 5861(d) raises three issues. The district court overruled, after conducting a hearing thereon, the defendant's motion to suppress evidence obtained in a warrantless search of an automobile he was operating at the time of his arrest. Defendant contends that there was no probable cause for his arrest and that the ensuing search of the vehicle violated his Fourth Amendment rights.

The record discloses that about one hour before he made the arrest, an officer of the Ohio Highway Patrol received a radio dispatch describing in detail an automobile which was believed to have been involved in a possible kidnapping in Ft. Wayne, Indiana. Upon seeing an automobile which matched in every detail the description of the vehicle referred to in the dispatch, the officer began following the car. While following one or two car lengths behind the suspected vehicle, the officer saw the driver and male passenger in the front seat lean and reach toward the floor several times. After the automobile was clocked at 50 miles per hour in a 35 m.p.h. zone, it was stopped by the following officer in Maumee, Ohio, and he was immediately joined by another state patrolman and one or more Maumee policemen.

Though defendant was told he was under arrest for speeding, he was immediately "patted down," handcuffed and placed in the front seat of one of the state patrol cars. The defendant stated, according to the officer, that he had come from Ft. Wayne, Indiana. The arresting officer testified that the traffic arrest was incidental, that he also arrested defendant for possible kidnapping and if there had been no traffic violation he would have stopped the car on the basis of the radio dispatch. Upon first approaching the stopped vehicle the officer noticed a shotgun shell in a trash receptacle inside the car. The arresting officer further testified that shortly after the defendant and the front-seat passenger got out of the car a woman emerged from the back seat and said she had been abducted at gunpoint in Ft. Wayne. Immediately thereafter this officer searched the automobile, seizing the

shotgun shell which he had previously seen and a loaded sawed-off shotgun which was concealed under the front seat on the driver's side. The initials "AW" were on the gun.

There was no one in the automobile when it was searched and no one consented to the search. The search took place in the early afternoon while the automobile was stopped in a driving lane of U.S. Highway 24. There was no "berm" at this location, and all the activity took place on the main traveled portion of the highway.

■ The automobile was stopped, according to the officer, because he verified by personal observation the detailed description he had received of a vehicle suspected of being used in commission of a kidnapping. Under these circumstances he had probable cause to make the arrest. *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Defendant views his arrest as being for a traffic violation only and argues that *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), and *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973), authorize a search of a person, not of the vehicle following such an arrest. This ignores the abundant evidence connecting the automobile with a recent kidnapping. Probable cause to search the vehicle existed in view of the verification of details of the radio dispatch, the activity of the defendant and his male companion in reaching toward the floor, the sighting of a shotgun shell in plain view and the statement of the woman passenger. The only issue is whether the officer should have obtained a warrant before conducting the search.

Defendant argues that the contents of the car posed no danger to the officer since he (the defendant) was handcuffed and out of reach of the vehicle. He relies upon *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), for the proposition that a search incident to an arrest may be made without a warrant only to protect officers and to prevent the destruction of evidence, and is limited to the area immediately surrounding a suspect. Of course, the search in *Chimel* took place in the suspect's home, not on a busy highway. The search of an automobile which an officer has reasonable grounds to believe has been used in the commission of a felony is subject to a different test. The case before us presented a situation where, " . . . if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search." *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). As the Court stated, "For constitutional purposes . . . ." if probable cause to search the vehicle exists, it makes no difference which course is followed. *Id.* at 52, 90 S.Ct. 1975. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), where the warrantless search of an automobile parked in the driveway of a residence was held to violate the Fourth Amendment is distinguishable. Many of the facts in the present case parallel those in *United States v. Kemper*, 503 F.2d 327 (6th Cir. 1974), *cert. denied*, 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 824 (1975), where the search of a vehicle without a warrant was upheld. The district court properly denied defendant's motion to suppress.

■ The second issue on appeal relates to "incriminating statements allegedly made by Williams, the appellant, to Patrolman Geisel during the 'booking' procedures subsequent to Williams' being apprised of his right to remain silent." (Appellant's Brief, p. 31). The district court held a separate hearing on defendant's motion to exclude testimony of the "incriminating statements." The defendant testified at the hearing that he was advised of his rights as he was being handcuffed at the scene of the arrest and again at the police station. He tes-

tified that he had been advised of his rights many times and understood them. The court ruled that in view of defendant's testimony that the arresting officer made a full statement of his rights, that he understood his rights and never made any statement about the shotgun, no question of an intelligent waiver of constitutional rights was presented.

The arresting officer testified that as he was fingerprinting the defendant at the Maumee Police Station he commented that it (the shotgun) was a nice looking gun and asked where he had gotten it. According to the officer the defendant answered that he had bought it from a friend in Detroit. The District Judge found that the defendant did make this statement. Though defendant denied at the hearing on his motion to limit evidence that he had made the statement his counsel argues that if the statement was made it came in response to a "tricky" question which violated the Fifth Amendment right to remain silent. He relies particularly on the following language in *Miranda v. Arizona*, 384 U.S. 436, 473–74, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966):

> Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the in-

dividual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent. (Footnote omitted).

The district court noted that there was no extended or repeated questioning of defendant and that defendant made the statement with full understanding of his right to remain silent. This court has declined to interpret *Miranda* so narrowly as to preclude police officers absolutely from ever again questioning a person under arrest after he has refused to answer or give a statement. *Hill v. Whealon*, 6 Cir., 490 F.2d 629 (1974); *United States v. Rimka*, 512 F.2d 425, *cert. denied*, 422 U.S. 1046, 95 S.Ct. 2663, 45 L.Ed.2d 698 (1975); *United States v. Gay*, 6 Cir., 522 F.2d 429 (1975).

The defendant was taken to the police station within 20 or 25 minutes of his arrest and was booked shortly thereafter. According to his testimony he was advised of his right to remain silent and to have an attorney twice in this short period of time. Though he testified that he repeatedly refused to answer questions about the shotgun and refused to give any statement without a lawyer being present, the district court credited the testimony of the arresting officer that the defendant made the statement about purchasing the gun in Detroit. On the entire record we believe the prosecution sustained its burden of showing that the statement was voluntarily given by the defendant with full understanding of his right to remain silent.

■ The third issue relates to the refusal of the district court to give an instruction requested by the defendant, as follows:

> You are instructed as a matter of law that the mere presence of a short-barreled shotgun under the driver's seat of the car, without some evidence that the driver exercised some dominion over it, is not sufficient for you to find that it was in the possession of the driver.

The instructions as given permitted a conviction if the jury believed beyond a reasonable doubt either that the defendant knowingly had actual control and dominion over the shotgun or that he knowingly had constructive possession— that is the power and intention to exercise dominion or control over it. In addition to correctly defining the two types of possession, the charge advised the jury that the word "knowingly" was added for the purpose of ensuring "that no one would be convicted for an act because of mistake, or accident, or innocent reason." (Tr. 128). The instruction requested by defendant would have permitted a conviction only upon a finding of actual possession whereas the instruction as given permitted a conviction based either on actual or constructive possession. The instructions which the court gave were similar to those approved in *United States v. Henderson*, 482 F.2d 558, 560 (8th Cir. 1973). In *United States v. Gates*, 491 F.2d 720 (7th Cir. 1974), relied upon by defendant, it was held that the conviction of a passenger in an automobile for possession of an unregistered weapon could not be sustained when there was nothing other than proximity to indicate that he had any connection with the gun. The issue was the sufficiency of the evidence, and the instructions were not questioned. *United States v. Gates* is not authority for defendant's position that the court erred in denying his request for a special jury charge.

The judgment of the district court is affirmed.