**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kenneth William GILES,
Defendant-Appellant.**

**No. 75–2196.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 2, 1976.

Decided June 11, 1976.

Fulton B. Eaglin, Egnor, Hamilton & Eaglin (Court-appointed CJA), Ypsilanti, Mich., for defendant-appellant.

Kenneth Giles, pro se.

Ralph B. Guy, Jr., U. S. Atty., Peter J. Kelley, Detroit, Mich., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and WEICK and McCREE, Circuit Judges.

WEICK, Circuit Judge.

This appeal involves the validity of a search and seizure without a warrant of the baggage of an airline passenger who was carrying therein a large quantity of controlled substances.

Appellant, Kenneth William Giles, in a two-count indictment returned in the District Court, was charged with possession of controlled substances with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). He filed a motion to suppress, which was denied by the District Judge after conducting an evidentiary hearing. Giles then waived a jury and stipulated the evidence adduced at the hearing on the motion to suppress. He was found guilty on both counts by the District Judge. Giles appealed from the judgment of conviction. We affirm.

I

On November 17, 1974, while a flight was en route from Philadelphia to Detroit, the Northwest Orient Airlines office in Detroit received from its Philadelphia office, a message via their telex machine connecting the two offices. The message stated that on flight 541/17 there would be a medium-sized handbag type of luggage (an "AWOL" bag in airline terminology) which bore check number 234–311; the luggage was described as being black in color with a "Skooby Doo" sticker on the side. The telex message explained that as the bag was being loaded in Philadelphia it came open, and that an equipment serviceman (ESM named Harrison) found that the bag was

filled with pills in plastic bags which were covered with newspaper.[1]

Mr. Harrison communicated this information to Mike Terlesky, who was Operations Superintendent of Northwest at its Philadelphia airport; Harrison then observed Terlesky send the information on the telex machine to Northwest's office at the Detroit Metropolitan Airport at about 8:10 o'clock p. m., Detroit time. At 8:12 p. m. the telex message was received by Edward J. Krunsky, who was Northwest's Service Manager at the Detroit Metropolitan Airport. The information was relayed by Mr. Krunsky to Wayne County Sheriff's deputies. In our opinion this was a reasonable procedure for Mr. Krunsky to follow.

When the Philadelphia flight arrived in Detroit some fifteen minutes later a black bag with a "Scuba Duba" decal on the side was found, and the claim number on the bag was identical with the number mentioned in the telex message. The bag was searched by the deputies, and plastic bags filled with pills were discovered in the bag. One of the deputies, Officer Wadsworth, testified that he was positive that the pills were narcotics because of their quantity, because they were unmarked, and because they were not commercially packaged. The deputies then returned the bag to the luggage conveyor belt, and it was picked up by the skycap. The skycap carried three bags out to the parking lot.

Giles arrived in his car and at his direction those three bags were placed by the skycap in the trunk of Giles' car. As Giles left the parking lot in his automobile he was arrested. The arresting officers opened the trunk of his car, seized the luggage, and took Giles to the Sheriff's station. The small black bag was opened and a box containing cocaine was found in addition to approximately twenty-five plastic bags,

each one containing abut one thousand pills. Those pills were subsequently identified as methaqualone, a controlled substance. Additional plastic bags containing methaqualone were found upon search of the other two pieces of luggage.

Giles contends that the District Court erred in denying his motion to suppress. In addition, Giles contends that the evidence is insufficient to support his conviction because the Government did not prove that he had the intent to possess and distribute the controlled substances, proof of both of which is required for a conviction under 21 U.S.C. § 841(a)(1).

## II

We will deal first with Giles' Fourth Amendment claims. We are of the opinion that the deputies had probable cause to conduct a search of the black AWOL bag. The telex message contained sufficient reasonably trustworthy information such that a prudent person could conclude that the bag contained contraband. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

The communication was made by a prestigious airline, from one of its offices to another, in the regular course of its business, and was inherently reliable. The telex must be construed in a common sense fashion. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

We agree with the observation of the District Judge that the information that a medium-sized suitcase was "filled" with pills in plastic bags, with newspaper on top, in the context of the commercial airline setting would compel a reasonable person to conclude that it was exceedingly probable that illegal drugs were being transported.[2]

1. The text of the telex message was as follows: ATTN IAS/ON FLT 541/17 WILL BE 1 AWOL BAG ON DTW CK NR 234–311 AS ESM WERE LOADING SAME ON A/C SAME OPENED AND SAME WAS FILLED WITH PILLS IN PLASTIC BAGS WITH NEWSPAPER ON TOP OF SAME/SAME IS BLK IN COLOR AND HAS A STICKER WITH SKOOBY DOO ON SAME/UNABLE TO CK SAME OUT HERE WOULD HAVE DLYD FLT/USE YUR DISCRESSION IN THIS MATTER TERLESKY.

2. Deputy Theismeyer testified that when he received the telex from the Northwest Orient Service Manager, someone had written "green pills size/of buffered aspirin" on the bottom of

In addition, the telex message contained the necessary indicia of reliability such that the deputies were warranted in believing its contents. First, the telex clearly explained the circumstances under which the information was acquired. The information was based on an equipment serviceman's personal observation of the pills and his observation of the telex message when it was sent by Terlesky. Further, the telex explained that the discovery of the pills was made inadvertently when the bag opened while it was being loaded.

We note that prior to the search of the AWOL bag the deputies were able to corroborate several facts contained in the telex message: there was a black AWOL bag; it was on Northwest flight 541/17 from Philadelphia; it bore the same claim numbers as indicated in the telex; and the bag had a sticker thereon with words similar to those contained in the telex. Further, the tip came from a reliable employee of the airline and not from an informant in a criminal setting whose motives may be suspect. This fact enhances the reliability of the tip contained in the telex message.

The information in the law enforcement officials' possession was surely sufficient to obtain a warrant from an impartial Magistrate. The telex contained sufficient information so that the reliability of the "informant" (the Superintendent of Operations in Philadelphia) was clear. The corroboration by the deputies of the details contained in the telex served to establish the dependability of the information. See Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).[3]

We conclude that the deputies had substantial basis for their belief that the black AWOL bag contained illegal drugs and that therefore they had probable cause to conduct a search. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

We must also resolve the question whether there were sufficient exigent circumstances to justify a search without a warrant. The deputies had only about fifteen minutes before the plane from Philadelphia would arrive in Detroit. The Government maintains that time was of the essence, and that a delay in the receipt of the baggage (so that a warrant could be obtained) may well have alerted the one who was to pick up the bag to the possibility that the contraband had been discovered, thus allowing him to escape. This concern was legitimate. It is not necessary to obtain a search warrant if at the time it appears likely that the delay incident to obtaining a warrant would result in losing the opportunity to apprehend a law violator. United States v. Birmley, 529 F.2d 103 (6th Cir., 1976).

We conclude that the deputies' perception of the time limitations under which they were working was reasonable. The exigent circumstances at the Detroit Airport were such that a search warrant was not required so long as probable cause for the search of the AWOL bag existed.

Giles further challenges the propriety of the deputies' actions occurring after the arrest when they seized the three pieces of luggage in the trunk of his automobile and took them to the Sheriff's station, where they were searched. First, the warrantless search of the car was permissible under the Fourth Amendment. It is clear that the deputies had probable cause to

---

3. The dissent's reliance on our decision in United States v. Jackson, 533 F.2d 314, is misplaced. In that case the informer was unreliable. In the present case we have a most reliable informer and the expert opinion of the officers based on the huge quantity of the pills and the manner in which they were carried.

the message. The origin of this notation was never satisfactorily explained as the Northwest Orient Service Manager, the only person who handled the telex before Deputy Theismeyer, testified that he was not responsible for the writing on the bottom thereof. However, the written notation adds nothing for purposes of determining whether probable cause existed. Finally, we note that the District Judge held that the writing on the telex was inadmissible as evidence.

search the car. They knew that a bag, which in their expert opinion contained illegal drugs, was placed in the trunk of the automobile being driven by appellant. In fact, the deputies watched the skycap as he placed the bag in the trunk.

As long as there was probable cause to search the trunk, for constitutional purposes there is no difference between "on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant." *Chambers v. Maroney*, 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). *See United States v. Williams*, 526 F.2d 1000 (6th Cir. 1975); *United States v. Kemper*, 503 F.2d 327, 332 (6th Cir. 1974), *cert. denied*, 419 U.S. 1124, 95 S.Ct. 810, 42 L.Ed.2d 824 (1975). Thus the search of the trunk and the seizure of the luggage were permissible.

A question was raised as to the permissibility of the second search of the AWOL bag by the deputies in the Sheriff's station. This Court has held that the warrantless search of a suitcase being held by a defendant at the time of his arrest is constitutionally valid. *United States v. Kaye*, 492 F.2d 744 (6th Cir. 1974); *United States v. Burch*, 471 F.2d 1314, 1316 (6th Cir. 1973). *See United States v. Battle*, 166 U.S.App.D.C. 396, 510 F.2d 776 (1975).

■ These decisions were based on the Supreme Court's rationale in *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), wherein it was made clear that a warrantless search of a lawfully arrested person and the area within his immediate control for weapons and for fruits and instrumentalities of the crime which might be concealed or destroyed, was permissible. *Kaye* and *Burch* merely extended the permissible scope of that search to luggage in the possession of a person at the time of his arrest. There is no qualitative difference between the search of a suitcase seized by the police from the defendant himself, and the search of a suitcase seized as a result of the lawful search of defendant's automobile. In both situa-

tions the luggage is under the complete control of the police. We can see no justification for distinguishing the situations. In addition, we note that one permissible warrantless search of the black AWOL bag had already taken place. It would serve no purpose to require the deputies to procure a search warrant before searching the bag for the second time.

■ The search of the other two pieces of luggage in Giles' possession constituted a valid inventory search which did not require a warrant. It was a custodial search. *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). One of the arresting officers testified that the bags were opened pursuant to standard police procedure so their contents could be inventoried and a receipt given to appellant. The District Court found that this explanation was credible and we agree. We conclude that the deputies' actions in this case were proper. The factual findings adopted by the District Court in its opinion denying the motion to suppress are supported by substantial evidence and are not clearly erroneous. The denial by the District Court of the motion to suppress was correct.

■ Finally, Giles challenges the sufficiency of the evidence relied upon by the District Judge to support the judgment of conviction. To be convicted under 21 U.S.C. § 841(a)(1) it is required that the trier of the fact be convinced beyond a reasonable doubt that Giles knew he had possession of the controlled substances and that he had the requisite intent to distribute them.

■ Two facts led the District Judge to infer that Giles had knowledge of the contents of the suitcases. First, the fact that Giles had a key for one of the suitcases led the Court to infer that Giles had knowledge and control of the contents of that suitcase. He was doing something more than merely acting as a carrier. Second, Giles' statement that he was to receive $500 for conveying the bags was relied upon by the Court to support its inference that appellant knew that the suitcase contained illegal

drugs. The inferences drawn by the District Judge from the evidence presented were proper. In the absence of any testimony rebutting those inferences, they provided sufficient circumstantial evidence to establish beyond a reasonable doubt Giles' dominion and control over the contents of the suitcases. *See United States v. Gomez-Rojas*, 507 F.2d 1213, 1222 (5th Cir.), *cert. denied*, 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975).

■ The District Judge inferred that Giles had the requisite intent to distribute the controlled substances from the sheer quantity of drugs which he had in his possession. He had approximately 75,000 tablets of methaqualone and approximately 123.6 grams of cocaine, at the time of his arrest. The District Judge concluded that these drugs were not for his personal use, and that therefore he had the intent to distribute them. Such an inference is permissible. *United States v. Luciow*, 518 F.2d 298 (8th Cir. 1975); *United States v. Moore*, 452 F.2d 569, 573 (6th Cir. 1971), *cert. denied*, 407 U.S. 910, 92 S.Ct. 2435, 32 L.Ed.2d 684 (1972).

We note that "distribute" is defined in the Controlled Substance Act as mere delivery of a controlled substance. 21 U.S.C. § 802(11). Under this relaxed definition of "distribute" there was sufficient evidence to conclude beyond a reasonable doubt that appellant had the intent to distribute the controlled substances in his possession. Appellant's statement to the police that he was being paid for picking up the suitcases further supports this conclusion. *See United States v. Oquendo*, 505 F.2d 1307 (5th Cir. 1975).

Persons who use the airlines for travel must of necessity make adjustments to their rights to privacy. They are not permitted to carry on the aircraft weapons, explosives, or other contraband. To eliminate potential danger, and for the safety of the aircraft, the crew and other passengers, all passengers are subject to reasonable search and seizure. In our opinion the searches and seizures in the present case were not only reasonable but also were required.

Affirmed.

McCREE, Circuit Judge (dissenting).

I respectfully dissent.

The question before us is whether the facts and circumstances within the knowledge of the officers at the time they made the search, and of which they had reasonably trustworthy information, were sufficient to warrant a man of reasonable caution to believe that illegal drugs were in the bag they seized and searched. *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

Here the telex message (quoted in full in the majority opinion) contained the only information known to the officers before they searched Giles' suitcase.[1] The majority opinion holds that the average person, told that a medium-sized suitcase shipped on a commercial airline was "filled with pills," would conclude that it was "exceedingly probable" that the bag contained *illegal drugs*.

I do not agree that the telex message afforded probable cause to believe that there were *illegal drugs* in the suitcase. There is nothing in the record to indicate that the term "pills," or the way in which the pills here were being carried, had any special significance to the officers. The general definition of the word "pill" is "a medicine in the form of a little ball or a small rounded mass that is to be swallowed whole." *Webster's Third New International Dictionary*. Without evidence showing a special significance of the number of pills, or the way they were packed, the telex message affords no more probable cause than a communication that a bag full of medicines or chemicals had been checked with the airline. Medicines and chemicals,

---

1. Because "Terlesky," the signatory of the Telex, was not known to either the Detroit air line personnel or the police officers, the reliability of the message was not established.

as well as pills, may be either legal or illegal substances.

I cannot distinguish this case from our recent decision in *United States v. Jackson,* 533 F.2d 314 (Decided and filed April 12, 1976), where agents arrested a woman based on an informant's tip describing her general appearance,[2] and stating that she would be arriving at a bus station at noon on a certain date to deliver 14 ounces of heroin to the informant. Judge Weick, writing for the court, stated:

> [W]e are unable to conclude that probable cause was established on the basis of the information supplied by Goff, even when supplemented by the agents' observations of Goff and Jackson on the day of her arrest.
>
> *The agents may have had reason to be suspicious of Patricia Jackson, to place her under surveillance, or even to attempt to arrange a purchase of heroin from her; however, mere unconfirmed suspicion is not the criteria upon which probable cause is based. Something more was needed, and even the agents recognized this.* [Emphasis added.]

I would similarly hold that although the telex message should have alerted the officers here to investigate further to corroborate their suspicions, it did *not* afford probable cause to seize appellant Giles' bag and search it. I would therefore reverse the conviction because it was based upon evidence seized in violation of Giles' Fourth Amendment rights.

---

**2.** The informant, a friend of appellant's ex-husband, described her as "a black female, approximately five feet tall, weighing one hundred pounds . . . she usually wore slack suits . . . ."