UNITED STATES of America,
Plaintiff-Appellant,

v.

James Mitchell CRAEMER,
Defendant-Appellee.

No. 76–2452.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 17, 1977.

Decided May 11, 1977.

Frederick M. Coleman, U. S. Atty., Clarence B. Taylor, Cleveland, Ohio, for plaintiff-appellant.

William S. Halberg, Beachwood, Ohio, for defendant-appellee.

Before EDWARDS and CELEBREZZE, Circuit Judges, and TAYLOR *, District Judge.

CELEBREZZE, Circuit Judge.

The Government appeals from the granting of a motion to suppress evidence seized by agents of the Drug Enforcement Administration (DEA) during a warrantless search of Appellee's luggage in the parking lot of Hopkins International Airport in Cleveland, Ohio. Appellee, James Mitchell Craemer, was indicted for violating 21 U.S.C. § 841(a)(1) (1970), possession of a controlled substance, hashish, with the intent to distribute. After holding an evidentiary hearing on the suppression motion, the District Court ruled from the bench that the evidence seized during the search had to be suppressed because the Government failed to demonstrate that the warrantless search satisfied any exception to the warrant requirement. The District Court also noted that the agents had failed to obtain a search warrant even though they had ample opportunity to do so. We affirm the sup-

pression order because we conclude that the facts known to the agent at the time of the search did not amount to probable cause.

On February 10, 1976, Mr. Paul Benoit, an employee of Eastern Airlines, contacted agents of the Drug Enforcement Administration to report that two passengers departing on an early morning flight to Miami, Florida had met the drug courier profile distributed by the DEA. The courier profile lists a number of characteristics believed to be common to persons using airports for narcotics traffic. Among the characteristics included in the profile are that the individual purchases a round trip ticket to various locations in the nation known as drug distribution centers, including Miami, Florida, New York, New York, Los Angeles, California, and San Juan, Puerto Rico, to return the same day or within a short period of time; the tickets are purchased with cash using bills of small or large denominations; the individuals either check no luggage or they check empty bags; they often use aliases; and they behave in a suspicious or nervous manner.

Special Agent Magoch interviewed Mr. Benoit at the airport. Mr. Benoit informed Agent Magoch that two persons, who identified themselves as Mr. and Mrs. Craemer, had purchased round trip tickets to Miami to return that evening aboard Eastern Airlines Flight No. 482. Mr. Craemer had sought reservations on an earlier return flight because he expected to conclude his business in Miami within an hour or a short period of time. He had paid for the tickets with cash from a large roll of bills and had checked no luggage. Mr. Benoit also mentioned that the woman was dressed "very sloppily" and that they both behaved in a nervous and suspicious manner. Agent Magoch traced the telephone number on Mr. Craemer's reservations to Mrs. Irene Craemer of Solon, Ohio. He then contacted Officer Godzich of the Solon Police Department who informed him that Mr. Craemer was suspected of being a narcotics dealer.

* The Honorable Robert L. Taylor, Judge U. S. District Court, Eastern District of Tennessee, sitting by designation.

He also identified Mr. Craemer's companion as Nancy Knowles. After he spoke with Agent Magoch, Officer Godzich contacted a "reliable" informant for current information on Mr. Craemer. The record does not disclose the nature of Officer Godzich's initial contact with the informant but the informant recontacted the officer within a short time to inform him that Mr. Craemer was out of town although he did not know his destination. The informant assumed that he had probably gone to pick up some "stuff". Officer Godzich assured Agent Magoch that the information was reliable since the informant had given information in the past which had led to two convictions.

Armed with a photograph of Mr. Craemer furnished by Officer Godzich, Agent Magoch returned to the airport and Mr. Benoit identified Mr. Craemer as the man who had purchased the tickets to Miami. Agent Magoch and other DEA agents set up surveillance at the airport monitoring all incoming flights from Miami. The surveillance began in the early afternoon around 2:00 p. m. and continued for approximately fourteen hours. At no time was an attempt made to secure a warrant. At 3:25 a.m., Mr. Craemer and his companion disembarked from Eastern Airlines Flight No. 482. DEA agents observed them proceed down the airport concourse, stopping on three occasions. They went directly to Mr. Craemer's automobile in the airport parking lot which was also staked out by DEA agents. No attempt was made to intercept Mr. Craemer until he placed the bag he was carrying in the trunk of the automobile. At that time, the agents approached the car and identified themselves, informed Mr. Craemer that they had reason to believe that he was carrying narcotics, and asked for consent to inspect his suitcase. He refused to consent to the search. Whereupon, Agent Magoch notified him that due to the lateness of the hour it would be impracticable to obtain a search warrant and since the bag had been placed in an easily movable vehicle, the agents would conduct a search without his consent. The search of the suitcase uncovered a green plastic garbage bag filled with a resinous substance which the agents believed to be hashish. Mr. Craemer claimed that it was modeling clay. The agents did not have a field test unit with them so they seized the substance for later testing. Mr. Craemer and his companion were not placed under arrest and were permitted to leave the area. Subsequent testing of the substance positively detected the presence of marijuana and on February 13, 1976, Appellee was placed under arrest.

Probable cause exists when the facts and circumstances within the agents' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that an offense is being or has been committed. *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1927). Satisfaction of the DEA's drug courier profile does not, in itself, establish probable cause. *See e. g., United States v. Floyd,* 418 F.Supp. 724, 729–30 (E.D.Mich.1976); *United States v. Van Lewis,* 409 F.Supp. 535, 543 (E.D.Mich. 1976). The agents must be able to point to additional articulable facts which indicate that the suspect is engaged in criminal activity. *See United States v. Hunter,* 550 F.2d 1066, 1069 (6th Cir. 1977). The only information known to the agents which imbued Appellee's otherwise innocent conduct with a tinge of criminality was the unsupported allegation of an unnamed informant that Appellee had probably left town "to pick up some stuff". However, the informant's tip fails to satisfy the second prong of the two-pronged test set down by the Supreme Court in *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 415, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), because it lacks an indication of the underlying circumstances from which the informant concluded that the facts are what he claims they are and from which the agents could conclude that the informant was credible or his information reliable. Of course, deficiencies in an informant's tip may be cured by independent corroboration of the details contained in the tip by inves-

tigating officers. *See Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). But the officers' corroboration must go to the essence of the tip, that the suspect is engaged in a criminal undertaking. *See Whiteley v. Warden,* 401 U.S. 560, 567, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). Here, the facts observed by the officers merely corroborated what they already knew, they did not confirm the informant's supposition that Appellee had left town to purchase drugs. In explaining why the agents did not seek a warrant, the Government conceded that probable cause did not exist until the agents had observed Appellee disembark from the Miami flight and carry his suitcase to the automobile. However, all the conduct observed by the agents was entirely consistent with innocent behavior, as such it cannot corroborate the information supplied by the informant and form the basis for a finding of probable cause. *See United States v. Jackson,* 533 F.2d 314, 318–19 (6th Cir. 1976); *United States v. Jordon,* 530 F.2d 722, 724–26 (6th Cir. 1976). In arguing that there was probable cause to search, the Government relies on our decision in *United States v. Giles,* 536 F.2d 136, 138–39 (6th Cir. 1976). This reliance is misplaced however, because the factual situation in *Giles* was markedly different from the facts in this case. In *Giles* the agents were informed by the airlines that a suitcase on a flight from Philadelphia to Detroit had opened during loading and airport personnel observed that the case was filled with pills in plastic bags wrapped in newspaper. The telex message containing the information arrived fifteen minutes before the flight was due to arrive. The surveillance was intended to identify the owner of the bag. Unlike the tip in this case, in *Giles* the information contained in the telex and corroborated by the officers was found to satisfy both prongs of the *Aguilar-Spinelli* test. 536 F.2d at 139. The Government makes the additional contention that, even if the agents did not have probable cause to search, the facts known to the agents were sufficient to warrant an investigative stop under the stop and frisk principle of *Terry v. Ohio,* 392 U.S. 1, 88

S.Ct. 1868, 20 L.Ed.2d 889 (1968). This argument is unavailing after our decision in *United States v. Hunter,* 550 F.2d at 1070–72, where we held that a search by DEA agents under circumstances similar to those present in this case exceeded the legitimate scope of a *Terry* search. In *Hunter* we noted that *Terry* authorizes a limited protective search for weapons but does not permit the search of luggage for narcotics. Since there was no probable cause to search, we need not reach the question of whether the search fit any of the exceptions to the warrant requirement. *Coolidge v. New Hampshire,* 403 U.S. 433, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The judgment of the District Court is affirmed.