**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Wilford BURCH, Defendant-Appellant.**

**No. 72–1415.**

United States Court of Appeals,
Sixth Circuit.

Jan. 12, 1973.

Clifford R. Williams, Detroit, Mich., on brief for defendant-appellant.

Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., on brief for plaintiff-appellee.

Before PHILLIPS, Chief Judge, Mc-CREE, Circuit Judge and BRATCHER,* District Judge.

BRATCHER, District Judge.

Defendant appeals from judgment of conviction upon trial without a jury of the offense of illegal possession of heroin, in violation of 21 U.S.C. § 174. Three other counts dealing with importation and possession of cocaine and the purchase of heroin were dismissed for a variety of reasons, none of which are pertinent here.

The arrest and search of appellant climaxed several months of investigative work by agents of the Bureau of Narcotics. The federal agents first noticed appellant in the fall of 1969 when the Bureau processed a case against Burch and his son for possession of narcotics. On the day of the arrest, February 13, 1970, the agents were conducting a surveillance of the defendant. Their investigative activities had been intensified because of information received from a proven reliable informant that defendant was supplying quantities of contraband narcotics to cities in Ohio and Michigan. This unnamed informant had given over 50 tips to the agents concerning violations of the narcotics laws and the information had always proved reliable and accurate.

The information was that Burch used two female couriers to transport illicit drugs to certain cities, that the modus operandi would be for the female courier to travel from the city to be supplied to New York and then proceed to the Blue Star Supermarket, which was owned by the defendant. After making the pickup she would return to either Detroit or Chicago. The Detroit courier was described by the informant as a blond female Caucasian.

On the afternoon of February 13, 1970, the surveillance agents observed Burch, another male Negro, and a blond female Caucasian leave the Blue Star Market and drive away in a Plymouth automobile. They were followed to La Guardia Airport where Burch and his female companion, later identified as Catherine Wagner, boarded a plane for Detroit. During this period Burch carried the only luggage, a white overnight case. Upon the suspects departure, the foregoing information was communicated to federal agents assigned to Detroit.

Acting on this information the Detroit agents proceeded to the airport and, after a brief period of surveillance, arrested appellant and Mrs. Wagner.

---

* The Honorable Rhodes Bratcher, United States District Judge for the Western District of Kentucky, sitting by designation.

Contemporaneous with the arrest the agents seized and searched the suitcase and found 1200 grams of cocaine and 550 grams of heroin. In making the arrests the narcotics officers relied not only on the information supplied by the New York office but also on their own observations and their general knowledge of the illicit drug traffic in the Detroit area.

Prior to trial, appellant moved to suppress the seized evidence as having been secured through an unlawful arrest and search. After a hearing the trial Judge overruled the motion, holding that the arresting officers had probable cause to arrest defendant without a warrant. Therefore, the subsequent search of the luggage made incident thereto was valid and the evidence so obtained was admissible. At the trial the seized evidence was offered and over objection was admitted.

Appellant contends on appeal that:

(1) The narcotics agents lacked probable cause for his arrest without a warrant and the contemporaneous search and seizure of the luggage;

(2) The proof was insufficient to support by substantial evidence the verdict of guilty; and

(3) The trial Judge, in a jury-waived trial, may not participate in the examination of witnesses.

The critical question presented by appellant's first argument is the constitutional validity of the warrantless arrest. If the arrest itself was lawful, then the search made incident thereto did not exceed the permissible limits imposed on a search without a warrant. See Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); United States v. Simpson, 453 F.2d 1028 (10th Cir., 1972); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

The rule was best expressed in the *Beck* decision, *supra,* where the Supreme Court stated:

"Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."

The leading Supreme Court pronouncement on the question of probable cause sufficient to ground a warrantless arrest is Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, a case factually similar to the instant case. The Court, in finding probable cause to support an arrest without warrant based upon information supplied by an unnamed paid informant, stated:

"There is a large difference between the two things to be proved (guilt and probable cause), . . . and therefore a like difference in the quanta and modes of proof required to establish them."

Continuing, the Court followed the criteria set forth in Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949):

"In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

It is felt that the imposition of more stringent standards would needlessly hamper effective law enforcement, and to demand a lesser showing to sustain a warrantless arrest would leave law-abiding citizens unprotected, subject to the policeman's whim or caprice. See Brinegar v. United States, *supra.*

■■ In this Circuit hearsay information from an informant which otherwise satisfies the probable cause requirements for a warrantless arrest cannot be successfully challenged simply be-

cause his identity is not revealed. United States v. Jensen, 432 F.2d 861, 863 (6th Cir., 1970); Draper v. United States, *supra.* However, where the initial impetus for an arrest is an unnamed informer's tip, the arresting officers must·corroborate by independent investigation the information that the arrestees committed a felony or were in the process of committing a felony. See Draper v. United States, *supra*; Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

Applying the above standards to the case at bar, the information possessed by the Detroit narcotics agents at the time of arrest and search consisted of: (1) the informer's tip that appellant was supplying illicit drugs to several cities, including Detroit, detailed *supra*; (2) the knowledge that Burch was involved in narcotics violations as early as October, 1969; (3) the information derived from concerted surveillance activity of the defendant which corroborated the informant's description of his modus operandi; (4) the confidential informant had purchased narcotics from appellant Burch on previous occasions; (5) the arresting agents had a report containing information supplied by a Chicago informant that Burch was known to deliver drugs to Cleveland, Pittsburgh, Detroit and Chicago; (6) the arresting agents observations immediately prior to the arrest; (7) the general knowledge of the agents as to persons dealing in illegal drugs. Burch was arrested while attempting to enter an automobile known to the agents to belong to a person active in the illicit drug trade in Detroit.

■ We conclude that the arresting agents had probable cause and reasonable grounds to believe that appellant was committing a violation of the narcotics laws at the time of his arrest. The arrest being lawful, the search and seizure incident thereto was likewise valid. The motion to suppress was properly denied and the seized narcotics were properly admitted into evidence.

Next, appellant alleges that the evidence was not sufficient to sustain the conviction, contending that the trial Judge erred in believing the testimony of witness Catherine Wagner as opposed to contradictory testimony offered by members of defendant's family.

It is generally accepted that a showing of inconsistent statements will not make the testimony incredible as a matter of law. Such contradictions merely reflect on the accomplice's credibility, and it is for the trier of fact to determine their weight. See United States v. Carter, 428 F.2d 969 (4th Cir., 1970); and United States v. Maddox, 394 F.2d 297 (4th Cir., 1968).

■ This Circuit follows the general rule that in federal prosecutions the testimony of an accomplice may be sufficient to sustain a conviction even though not corroborated, if it generates a belief beyond reasonable doubt. See United States v. Callis, 390 F.2d 606 (6th Cir., 1968); United States v. Haynes, 403 F. 2d 54 (6th Cir., 1968).

Here, the principle evidence was the illicit drugs themselves, and Mrs. Wagner's testimony only served to corroborate possession of the narcotics in appellant. We cannot say as a matter of law that the trial Judge erred in relying in part on Mrs. Wagner's testimony. The evidence supported the trial Court's decision.

■ Finally, we come to the contention that the trial Judge unduly participated in the examination of witness Joan Burch. It seems well settled that the presiding Judge may intercede in the questioning of a witness because of seeming inadequacy of examination or cross-examination by counsel, or to draw more information from reluctant witnesses or experts who are inarticulate or less than candid. Also, as a proper exercise of his discretion he may propound questions pertinent to a confused factual issue which requires clarification. See United States v. Carabbia, 381 F.2d 133 (6th Cir., 1967); Jackson v. United

States, 117 U.S.App.D.C. 325, 329 F.2d 893 (1964); and Patterson v. United States, 413 F.2d 1001 (5th Cir., 1969).

■ Only after extensive examination of this witness by both attorneys did the Judge intercede. The relevant portions of the transcript reveal that the purpose of the Judge's interrogation was to solicit additional information in order to clarify certain controverted factual questions. On the facts of this case we do not find that the Judge abused his discretion or that his questioning of witnesses constituted prejudicial and reversible error.

The judgment of the District Court is affirmed.