**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Patricia JACKSON a/k/a Patricia Lynn
Houston, Defendant-Appellant.**

**No. 75–1718.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 5, 1975.

Decided April 12, 1976.

Arthur Wells, Jr., Wells & Chesney, Inc., Oakland, Cal., for defendant-appellant.

William W. Milligan, U. S. Atty., Anthony W. Nyktas, Robert J. Kielty, Cincinnati, Ohio, for plaintiff-appellee.

Before WEICK, PECK and MILLER, Circuit Judges.

WEICK, Circuit Judge.

Patricia Jackson was charged in a two-count indictment returned in the District Court with [1] possession of 250 grams of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and [2] carrying a firearm during the commission of a felony, in violation of 18 U.S.C. § 924(c)(2). At the close of the evidence the District Judge dismissed the firearms Count 2 of the indictment, and she was convicted by the jury on the narcotics charge in Count 1. She was sentenced to ten years' imprisonment pursuant to 18 U.S.C. § 4208(a)(2), with a special parole term of three years in addition.

In her appeal Jackson asserts that the District Court erred in denying her motion to suppress evidence. She contends that her warrantless arrest outside of her hotel room in Cincinnati, at which time Drug Enforcement Administration (DEA) agents forcibly seized from her hand the key to her room, was without probable cause, and likewise that their use of the key to enter her room and search her suitcase therein without a search warrant was not incident to the arrest and violated her Fourth Amendment rights.

In the indictment Jackson was given an alias because she went under her maiden name of Jackson after her divorce from Robert Houston in 1970.

I

THE FACTS

The case against Patricia Jackson began to develop with the arrest on February 19, 1974 in Dayton, Ohio, of Robert Houston, her former husband, and Charles Goff, for possession of cocaine and heroin. After his arrest Goff began cooperating with DEA agents. Goff informed Agent Powell that a Patricia Houston would be meeting him in the Cincinnati Greyhound bus station at noon on March 26, 1974, and that she was to deliver to him 14 ounces of heroin. Goff described Houston as a black female, approximately five feet tall, weighing one hundred pounds; that she usually wore slack suits; and that she was coming from California.

The agents endeavored to verify this information by checking airlines in Cincinnati, but were unsuccessful because Mrs. Houston was traveling under her maiden name, Patricia Jackson.

On March 26, 1974 at 12:30 p. m. Goff met a woman at the bus station in Cincinnati, who fit the description which he had earlier given to Agent Powell. Responding to information given to them by Goff, five DEA agents were stationed at the bus terminal. Agent Powell had given to Goff $4,000 in "flash" money to be used by him in purchasing 14 ounces of heroin from Jackson; and they had searched Goff prior to this meeting with Jackson.

Goff and Jackson left the bus terminal and proceeded to the Sheraton Gibson Hotel; they were trailed by five of the agents. Several agents were on the same elevator with Goff and Jackson, who got off on the fourth floor. Agent Powell testified that after they got off the elevator he and Agent McCoy peered around the corner and saw Jackson open the door to room 485; that Jackson, without entering the room, slammed the door closed after she had apparently seen Powell and McCoy peer around the corner. Jackson and Goff started to leave the area, walking toward the agents. Jackson was wearing a purse strapped over her shoulder, and she was carrying a small puppy dog in a box. She also had the room key in her hand. As the agents identified themselves Jackson reached for her pocket. Agent Powell grabbed one of her arms and Agent McCoy took the room key from her other hand. The agents did not know at the time that room 485 was Jackson's room; they learned later that Jackson was registered at the

hotel and was assigned room 485. Agent Powell claimed that he grabbed Jackson by the arm because he thought she was reaching for a weapon. It developed, however, that she did not have a weapon in her pocket, but only a room key which was taken away from her. If the agents really thought she was armed it is not understandable why they never searched her purse, which was strapped over her shoulder. The agents did restrain Jackson's liberty outside of her room, and this constituted an arrest, although they did not formally advise her that she was under arrest at the time.

Agent McCoy opened the door to her hotel room, using the key which he had forcibly taken from Jackson. Allegedly the purpose of entering the room was to prevent the destruction of narcotics by an accomplice inside the room; however, they had no information or evidence that an accomplice was in the room. It was pure conjecture. If the agents really believed that an accomplice was in the room they could easily have ascertained the truth as soon as they opened the door and entered this small 10 x 12 foot room. They could have looked under the bed or even in the bathroom and garment closet if they thought that an accomplice was hiding there; but no accomplice was in the room and as soon as they discovered that fact they should have left the room. If they believed they had probable cause for a search they should have obtained a search warrant because no contraband was in plain view.

The agents certainly could not reasonably have been afraid of Jackson, who was five feet tall, weighing one hundred pounds, and whom they did not search except for the room key. Nor could they reasonably have been afraid of their so-called reliable informer Goff, who had been shot five times

by an assailant a few days before his meeting with Jackson, and who walked with a limp, using a cane. The agents had searched Goff just prior to his meeting with Jackson at the bus terminal, and at the time they had supplied him with the "flash" money to make the purchase from her.

When all five agents, along with Goff and Jackson, had entered this small room there was little space for anyone else. Presumably the agents were armed.

Agent Powell testified that after entering the room Jackson lunged for a partially opened suitcase which was on the bed. She was then restrained and her suitcase was fully opened. In it was found a .32 caliber revolver and a black vinyl cosmetic case, with soft sides. In the cosmetic kit they found heroin with a street value of about $175,700. At this time Jackson was informed that she was under arrest.[1] She was handcuffed. A handcuff was also placed on one of Goff's hands, the purpose of which is unclear. Thus Jackson's room was searched first and afterward she was formally advised of her arrest.

## II

## VALIDITY OF ARREST OUTSIDE JACKSON'S HOTEL ROOM

The first issue which we consider in this appeal is the validity of the arrest of Patricia Jackson. Whether her arrest was constitutionally valid depends upon whether, at the time the arrest was made, the agents had probable cause to make the arrest, that is, whether the facts and circumstances within their knowledge, and of which they had reasonably trustworthy information, were sufficient to warrant a prudent person in believing that Jackson had committed or was committing an offense. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145 (1964).

---

1. Jackson's version of her arrest and the search of her hotel room differs somewhat from the testimony of Agent Powell of the DEA. She testified that she did not open the door to room 485. Further, she testified that her suitcase was on the floor and was closed but not locked, and that an agent picked it up and put it on the bed. At that point she asked the agents whether they had a search warrant and one of them replied that they did not need one. For purposes of this appeal, however, we accept as true the testimony offered by the government agents as to the occurrences on the fourth floor of the Sheraton Gibson Hotel.

Our thorough examination of those facts and circumstances which were within the knowledge of the DEA agents at the time of Jackson's arrest has convinced us that probable cause for her arrest did not exist. At the time of Jackson's arrest the only information the agents had linking her with any illegal activity had come from the informer, Charles Goff. For purposes of determining whether Goff's information was sufficient to establish probable cause for Jackson's arrest, we examine that information in light of the two-pronged test articulated in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In order to judge the adequacy of the informant's tip we must examine both the reliability of the informant and the dependability of the information. Although a warrant for Jackson's arrest was not obtained, we apply the same *Aguilar-Spinelli* standard in determining whether there was probable cause for making the arrest without a warrant. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The only indication that Goff was reliable was the testimony of Agent Powell who testified that Goff told him "other things" that turned out to be true. We are not informed as to just what those "other things" were, and the record contains no additional indication upon which to determine whether Goff was reliable. Agent Powell testified only that he "hoped" Goff would give him information as to the other people involved in narcotics transactions, but this was not forthcoming. An important countervailing consideration, however, with regard to the reliability of Goff is the fact that the Government had no idea of what he was doing between the time he was arrested on February 19, 1974 and the March 26th meeting with Jackson. Agent Powell testified that, although he wished he knew, it was possible that Goff was arranging drug transactions during this time. This testimony hardly corroborates Goff in any respect and does not create any confidence in Goff's reliability. Surely this fac-

tor should be considered in determining that Goff was not a reliable informant for whose reliability anyone would be willing to vouch.

*United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), provides additional guidance by which we can determine whether an arrest as a result of an informant's tip was based on probable cause. In *Harris* the Supreme Court noted that police knowledge of the suspect's reputation as a moonshiner was to be considered when determining whether there was probable cause for the issuance of a search warrant. However, in the present case the agents had no independent knowledge of Jackson's reputation as a drug trafficker. There existed no police knowledge with regard to Jackson. In fact, the agents were unable even to determine from information given to them by Goff, how Jackson would travel from California to Cincinnati. This surely did not enhance Goff's credibility nor the testimony of the agents that they had reliable information.

In addition, the Court in *Harris* observed that the tip in that case was based on personal and recent observations by the unidentified informant of criminal activity. See *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). Goff gave the agents no such information with regard to Jackson.

Finally, in *Harris* the Court determined that the unidentified informant was credible because his statements to the police constituted a declaration against penal interest. The informant in *Harris* told the police about several incidents when he purchased moonshine liquor from the defendant. Federal law proscribes the sale, purchase or possession of such unstamped liquor. Thus, the informant, by his very act of informing, subjected himself to prosecution under federal law. According to the plurality opinion of Chief Justice Burger in *Harris* this fact enhances the credibility of an informant. Goff made no comparable declaration against his penal interest.

Although Goff and Jackson were arrested at the same time, it is difficult to under-

stand why he was arrested because he supposedly was carrying $4,000 of "flash" money which the agents provided him to make the purchase. The fact is that Goff was not prosecuted. He could not very well be prosecuted for doing the things which the DEA agents told him to do.

▪ Before taking Jackson into their custody the agents were able independently to verify the fact that Goff met with a woman fitting the general description given to them by him; however, this verification did not establish that Jackson was involved in any criminal activity. The crucial component in establishing probable cause, that being Jackson's involvement in a drug transaction, was in no way verified by the agents' observation of Jackson. Information gathered by the arresting officers can be used to sustain a finding of probable cause for an arrest that could not adequately be supported by the informant's tip itself, but the corroborating information must confirm that the arrestee committed the felony or was in the process of committing the felony. *Whiteley v. Warden,* 401 U.S. 560, 567, 91 S.Ct. 1031, 1036, 28 L.Ed.2d 306, 312 (1971).

▪ The "confirmation" made by the agents in the present case involved confirmation of innocent behavior, or suspicious behavior at most, on the part of Jackson. In no way did that confirmation relate to any criminal activity on her part. See *United States v. Jordan,* 530 F.2d 722 (6th Cir., decided March 1, 1976); *United States v. Larkin,* 510 F.2d 13 (9th Cir. 1974); *United States v. McNally,* 473 F.2d 934, 939 (3d Cir. 1973).

Finally, Goff's tip did not provide the wealth of detail supplied by the informant in *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In *Draper* the Supreme Court held that there was probable cause for the warrantless arrest. The informant in *Draper* had a six-month history of reliability, something which Goff did not have. In addition, the *Draper* informant described the man who was subsequently arrested as being a "Negro of light brown complexion, 27 years of age, 5 feet 8 inches tall, weighed about 160 pounds, and that he was wearing a light colored raincoat, brown slacks and black shoes." 358 U.S. at 309, n. 2, 79 S.Ct. at 331, 3 L.Ed.2d at 330. Further, the informant mentioned that the man would be carrying a tan zipper bag and that he habitually walked very fast. The man was arriving in Denver from Chicago on the morning of September 8 or 9, by train; the informant told the agent that this unnamed man had gone to Chicago to pick up three ounces of heroin. The details supplied by the *Draper* informant was held sufficient to establish probable cause for a warrantless arrest. The relative paucity of detail supplied by Goff in his statement to the DEA agents compels our conclusion that the *Draper* precedent is not controlling in the present case.

*United States v. Burch,* 471 F.2d 1314 (6th Cir. 1974), is not to the contrary. In that case this Court's determination that there was probable cause for the arrest of Burch was based on seven distinct factors; there was a significant amount of police action verifying the informant's tip insofar as it related to Burch's illegal actions.[2]

---

**2.** Our determination in *Burch, supra,* that narcotics agents had probable cause for an arrest and search was made on the basis of the following factors:

(1) The informer's tip that appellant was supplying illicit drugs to several cities, including Detroit, detailed *supra*; (2) the knowledge that Burch was involved in narcotics violations as early as October, 1969; (3) the information derived from concerted surveillance activity of the defendant which corroborated the informant's description of his modus operandi; (4) the confidential informant had purchased narcotics from appel-

lant Burch on previous occasions; (5) the arresting agents had a report containing information supplied by a Chicago informant that Burch was known to deliver drugs to Cleveland, Pittsburgh, Detroit and Chicago; (6) the arresting agents observations immediately prior to the arrest; (7) the general knowledge of the agents as to persons dealing in illegal drugs. Burch was arrested while attempting to enter an automobile known to the agents to belong to a person active in the illicit drug trade in Detroit. (471 F.2d at 1317).

We are aware that when dealing with the probable cause requirement a common sense approach must be adhered to lest the courts unduly hamper effective law enforcement. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

In dealing with probable cause we deal with probabilities, *i. e.,* the factual and practical considerations of everyday life on which reasonable and prudent persons act. *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Using this common sense approach, we are unable to conclude that probable cause was established on the basis of the information supplied by Goff, even when supplemented by the agents' observations of Goff and Jackson on the day of her arrest.

■ The agents may have had reason to be suspicious of Patricia Jackson, to place her under surveillance, or even to attempt to arrange a purchase of heroin from her; however, mere unconfirmed suspicion is not the criteria upon which probable cause is based. Something more was needed, and even the agents recognized this. We note that the agents failed to inform Jackson that she was under arrest until after they had conducted the search of her hotel room, opened her suitcase, and discovered the heroin. Agent Powell testified that the suitcase was partially open, but he had to open it fully in order to discover the contraband.

### III

VALIDITY OF WARRANTLESS ENTRY INTO PATRICIA JACKSON'S HOTEL ROOM, THE OPENING OF HER SUITCASE AND SEARCH AND SEIZURE OF ARTICLES LOCATED THEREIN

Assuming that the agents had probable cause to arrest Jackson without a warrant outside of her hotel room, by no stretch of the imagination did this authorize the agents to forcibly take away from her the key to her room and to open the door. The room at the time was her place of residence.

■ If the arrest outside the room were valid (which it was not) the agents would have had authority to search her outside of her room for weapons or for evidence. The search must be made in the area where the arrest is made, and not elsewhere.

It was so held in *Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970). In *Vale* police officers had a warrant for Vale's arrest. They had observed what they suspected was an exchange of narcotics between a known addict and Vale, after Vale had gone into his house and returned with something for the addict. The officers arrested Vale at the front steps of his home and announced that they would search his home, which they did. They searched a rear bedroom of his home and found narcotics there. In holding that the search was illegal the Court ruled that if a search is to be upheld as incident to an arrest, the arrest must take place inside and not outside of the house.

In *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Court held that even a search of a dwelling incident to an arrest must be made in the immediate vicinity of the arrest and substantially contemporaneous therewith.

■ To the same effect is *Agnello v. United States,* 269 U.S. 20, 32, 46 S.Ct. 4, 6, 70 L.Ed. 145, 148 (1925). Belief, however well founded, that articles are concealed inside a dwelling house, does not justify a search without a warrant. The arrest must be made inside the house.

*See also Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967).

In *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964), a hotel clerk gave to police officers a key to search defendant's room, and they found articles like those associated with a crime. The Court held that the search was invalid as violating the Fourth Amendment.

■ In *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948),

the officers detected the odor of opium emanating from a hotel room. They entered without a search warrant and arrested the occupant. They found opium and smoking apparatus. The Court held that the warrantless search violated the Fourth Amendment. The officers had probable cause to secure a search warrant. They had no right to make a warrantless entry into the hotel room.

It follows that the District Court erred in denying the motion to suppress and in admitting evidence at the trial as to the articles seized.

The judgment of conviction is reversed and the cause is remanded for further proceedings in accordance with this opinion.