UNITED STATES of America, Plaintiff-Appellee,

v.

Theodore Howard MAYES, Defendant-Appellant.

No. 76–2152.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 1, 1977.

Decided April 18, 1977.

---

W. Henry Haile, Haile & Martin, Nashville, Tenn. (Court-appointed CJA), Theodore H. Mayes, pro se, for defendant-appellant.

Charles H. Anderson, U.S. Atty., Irvin H. Kilcrease, Jr., Nashville, Tenn., for plaintiff-appellee.

Before CELEBREZZE, LIVELY and ENGEL, Circuit Judges.

CELEBREZZE, Circuit Judge.

Theodore Howard Mayes (Mayes) appeals from his federal conviction after a jury trial upon a one-count indictment charging him with armed robbery of a bank in violation of 18 U.S.C. § 2113(d). Mayes challenges the district court's denial of three aspects of his pre-trial motion to suppress statements and physical evidence. He contends that the district court erred in: 1) refusing to suppress a confession elicited from him within minutes of his warrantless arrest upon insufficient probable cause; 2) receiving at trial evidence concerning the discovery of proceeds of the robbery during a

search of his girl friend's apartment authorized by a coercively procured consent; 3) refusing to suppress a second, inculpatory pre-arraignment statement, made three days after his arrest, without properly considering the extended elapsed time between arrest and arraignment as a factor bearing upon the voluntariness of the statement, 18 U.S.C. §§ 3501(b)(1) and (c).

On May 15, 1976, in the late afternoon, FBI Agent William D. Mulkins, accompanied by Detective Henry Rogers, Sergeant Luther Summers and four other officers of the Nashville Metropolitan Police, went to an apartment in Nashville, Tennessee, occupied by Appellant Mayes's eighteen-year-old girl friend, Renee Smith.[1] Agent Mulkins had been told by Rogers that Summers had received information from an allegedly reliable informant that Mayes had been involved in the robbery of the Commerce Union Bank in Nashville the day before. The confidential informant, whose identity was never disclosed, had indicated to Summers that a sum of money taken from the bank could be found in a guitar case in Renee Smith's apartment.

When the officers arrived at the apartment they had no arrest or search warrants.[2] Agent Mulkins, Rogers and Summers identified themselves to Renee Smith and were admitted by her into the living room. There they unexpectedly found Mayes. Agent Mulkins announced that they were investigating a bank robbery and wanted permission to search the premises. Simultaneously, Summers sat Mayes on a sofa and gave him *Miranda* warnings. At this point Mayes demanded to see a search warrant. Agent Mulkins immediately ordered that Mayes be removed from the room because he was "talk-

ing rather loudly." Mayes was handcuffed and taken to a waiting patrol car where he was kept under guard for a period of time and then transported to Nashville police headquarters. In the interim, Renee Smith's mother spontaneously appeared on the scene and joined in the on-going efforts of Agent Mulkins and other officers to convince her daughter to permit the search. Ultimately, Renee Smith signed the consent form. In the course of the ensuing search, a guitar case containing some dye-marked money, allegedly taken during the robbery, was recovered from under a bed.

Approximately one-half hour after the consent form was executed, Mayes was given *Miranda* warnings by Agent Mulkins at police headquarters. He thereupon signed a waiver of rights form, admitted his participation in the crime, and promptly asked to see an attorney. Counsel was not assigned to him, however, until three days later at the time of his federal arraignment.

On May 18, the third day of Mayes pre-arraignment incarceration, he was picked up at the Metro Nashville Jail by FBI Special Agent James Callahan and taken to the U.S. Marshal's office in the federal building in Nashville in preparation for his appearance before a U.S. magistrate on the bank robbery charge. Agent Callahan knew at the time that Mayes had previously requested an attorney and that none had as yet been provided. Nevertheless, he proceeded to question Mayes who finally made a more detailed inculpatory statement. The substance of this statement, the May 15th confession, and testimony concerning the money found in Renee Smith's apartment were admitted in evidence at trial.[3]

■ The threshold issue presented is whether that quantum of reliable informa-

---

1. The time of their arrival is disputed. Renee Smith testified at the suppression hearing that the officers first appeared at approximately 4:30 p. m. Agent Mulkins testified that they arrived at 5:00 p. m. and spent no more than 30 or 40 minutes in the apartment. However, the search consent form was signed at 7:10 p. m. This supports the conclusion that a substantial amount of time was expended in procuring the women's consent to search the premises.

2. Agent Mulkins explained that their failure to get an arrest warrant was due to the fact that they had not anticipated finding Mayes in Renee Smith's apartment.

3. A third inculpatory statement, given by Mayes to a Metro police officer (without contemporaneous *Miranda* warnings) on the second day of his incarceration, was suppressed by the district court.

tion known to the officers at the moment that they arrested Mayes was sufficient to warrant a prudent person to reasonably believe that Mayes had committed or was in the process of committing an offense. *Carrol v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The Government concedes, in accordance with Agent Mulkin's testimony during the suppression hearing, that Mayes was arrested at the point when he was handcuffed and removed from Renee Smith's living room. *Henry v. United States*, 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). This occurred *before* the apartment was searched. Evidentiary fruits of a search can never be used to supply probable cause for an antecedent arrest, *Johnson v. United States*, 333 U.S. 10, 16–17, 68 S.Ct. 367, 92 L.Ed. 436 (1948), even when the evidence uncovered fully corroborates the substance of an informant's tip. *United States v. Jackson*, 533 F.2d 314 (6th Cir. 1976). Therefore, contrary to the finding by the district court, our assessment of whether adequate probable cause existed to justify Mayes's arrest must ignore the after-acquired guitar case with its incriminating contents.

■ Did the information originally supplied to Sergeant Summers by the confidential informant, couple with Mayes's observed behavior prior to his arrest, provide the requisite probable cause? We think not. The substance of the tip must be entirely discounted as inherently untrustworthy. The record is devoid of any factual indicia of reliability cognizable under the two-pronged test articulated in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Conclusory allegations of reliability will not suffice. Without detailed information concerning the informer's history of credibility and the means by which the intelligence conveyed in the tip was gleaned, we cannot sustain a positive finding of probable cause. *See United States v. Jordon*, 530 F.2d 722, 725 (6th Cir. 1976).

Although Mayes's presence in his girl friend's apartment might be said to have confirmed in some measure the accuracy of the tip, it totally failed to substantiate the allegations of criminal involvement. *United States v. Jackson*, 533 F.2d at 318. Mayes's observed conduct, immediately prior to his arrest, was innocent. The Government can point to no jurisdiction in which it is a criminal offense for an invited guest in a residential premises to vituperatively question the legal authority of police officers to intrude in the absence of a complaint or a valid warrant.

■ We conclude that Mayes was illegally arrested. It follows that his confession, made to Agent Mulkins at Nashville police headquarters within minutes of his arrest, should have been suppressed because it was a product of the exploitation of the initial illegality. *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). But for his illegal arrest, Mayes would not have been subjected to the custodial confrontation which prompted him to initially waive his right to counsel and to inculpate himself. *Hale v. Henderson*, 485 F.2d 266, 268 (6th Cir. 1973).

The discovery of the stolen money by Agent Mulkins before Mayes confessed failed to purge the primary taint because, under all of the circumstances, we find that Renee Smith's consent to the search of her apartment was not voluntarily given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The record reveals that Renee Smith was, at the time of Mayes's arrest, an 18 year old welfare recipient who had dropped out of school in the 7th grade. Mayes lived with her. On the afternoon in question, at least five law enforcement officers arrived at her apartment. She admitted three of them into her living room while two others stood guard by the front door. Mayes was summarily arrested in her presence, handcuffed and forcibly removed from the premises after he questioned the authority of the officers to proceed without a warrant and signaled to her not to consent to a search.

Renee Smith initially refused to give her permission. Agent Mulkins then gave her *Miranda* warnings. This prompts us to credit Renee Smith's testimony that Agent Mulkins also told her that she was a potential suspect in the bank robbery. It is undisputed that he said that if she did not consent to the search, he would get a warrant. Agent Mulkins and Sergeant Summers took her into the kitchen, which was just large enough to accommodate the three of them. There they attempted to convince her to execute the consent form. When her mother arrived on the scene, the officers enlisted her assistance in persuading her daughter to sign.[4] During this time Renee Smith was crying and was "scared to death." It appears from the record that it took the officers at least twenty to thirty minutes to procure the consent.

■ These facts support but one credible inference: that overzealous efforts by the officers to obviate the need to obtain a search warrant exposed Renee Smith to impermissibly coercive pressure. We hold that the resulting permission to search "was granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right." *Johnson v. United States*, 333 U.S. at 13, 68 S.Ct. at 368; *see Bumper v. North Carolina*, 391 U.S. 543, 548–549, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). The district court erred in refusing to grant Mayes's motion to suppress the physical evidence which was the product of this unconstitutional intrusion.

■ As his final assignment of error, Mayes claims that his three-day incarceration prior to appearance before a federal magistrate contravened Rule 5(a) of the Federal Rules of Criminal Procedure.[5] Mayes was arrested on a Saturday, but was not arraigned on the federal charge until the following Tuesday.[6] During the intervening period he was not afforded access to legal counsel, although he pointedly asked to see a lawyer within minutes of his arrest. From the record it appears that the Government never offered an explanation for this arguably excessive delay, as required by the proviso to 18 U.S.C. § 3501(c).[7] The district

---

4. The fact that the mother joined in pressuring her daughter to accede to the search request cannot be said to have dissipated the coercive atmosphere originally created by the official acts of the law enforcement officers. To the extent that the mother herself was influenced by the overbearing tactics, she served as unwitting agent of the authorities.

5. Rule 5(a) reads in pertinent part:
   An officer making an arrest * * * without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate or, in the event that a federal magistrate is not reasonably available, before a state or local judicial officer authorized by 18 U.S.C. § 3041.

6. On Monday, two days after his arrest, Mayes was arraigned before a General Sessions Court Judge on state bank robbery charges.

7. The relevant subsections of 18 U.S.C. § 3501, Title II of the Omnibus Crime Control and Safe Streets Act of 1968, read as follows:
   (a) In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.
   (b) The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment,
   *  *  *  *  *  *
   The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.
   (c) In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate or other officer empowered to commit persons charged with of-

court also seems to have ignored this issue in assessing the voluntariness of Mayes's May 18 inculpatory statement. Although unnecessary delay, in and of itself, is not sufficient to justify suppression of an otherwise voluntary confession under 18 U.S.C. § 3501(a), *United States v. Collins*, 462 F.2d 792, 796 (2d Cir. 1972), it is one of five relevant factors which the trial judge must consider in determining voluntariness. 18 U.S.C. § 3501(b)(1).

■ We agree with Mayes that, upon any retrial of this case, the district court will be under a duty to hear evidence concerning the cause of the arraignment delay and to weigh this element appropriately in deciding whether the May 18th statement shall be suppressed. *United States v. Keeble*, 459 F.2d 757 (8th Cir. 1972). As further guidance to the district court, we note that

if the pre-arraignment detention proves to be non-federal,[8] the Government will be relieved of any obligation to justify the delay unless Mayes can demonstrate that a "working arrangement" existed between the local police and the federal authorities designed to facilitate federal interrogation of suspects in violation of Federal Rule of Criminal Procedure 5(a). *United States v. Davis*, 459 F.2d 167, 170 (6th Cir. 1972).

The judgment of the district court is reversed and the case is remanded for a new trial.

fenses against the laws of the United States or of the District of Columbia if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: *Provided,* That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person be-

fore such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer.

8.  The record suggests that Mayes was initially confined in a municipal jail on state charges. The District Court never made a finding of fact on this point.