899 F.2d 14
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Rodney HENDERSON, Defendant-Appellant,
v.
UNITED STATES of America, Plaintiff-Appellee.
 No. 87-1944.
 United States Court of Appeals, Sixth Circuit.
 April 2, 1990.
 
 Before KEITH and ALAN E. NORRIS, Circuit Judges, and CHARLES W. JOINER, Senior District Judge.*
 PER CURIAM:
 
 
 1
 Defendant Rodney Henderson ("Henderson") appeals from the judgment of the district court finding him guilty of making false statements on Internal Revenue Service ("IRS") travel expense vouchers and conversion of a United States Treasury check. For the reasons set forth below, we AFFIRM.
 
 I.
 A.
 
 2
 Henderson is a college graduate and previously served as an officer in the U.S. Navy. Prior to his indictment, Henderson was employed by IRS as a Revenue Officer. From June 1983 through June 1985, Henderson submitted several travel vouchers to IRS; received numerous travel advances; and attended many out-of-town training courses.
 
 
 3
 On June 5, 1985, Henderson was granted a travel advance of $1,425.00 to attend a required "Phase II" training course. In August 1985, Henderson submitted a claim for the expenses he had incurred at the Phase II training course, even though he had previously received the June 5, 1985 travel advance of $1,425.00. On his voucher, Henderson stated that his outstanding balance was $311.48 and that IRS still owed him $1,425.00. In a letter dated August 21, 1985, IRS Fiscal Management Branch ("Fiscal Management") disallowed $36.75 of the $1,425.00, in travel expenses claimed by Henderson.
 
 
 4
 On August 26, 1985, Henderson received a travel advance check from Fiscal Management. The check was issued for $1,388.25, representing $1,425.00 Henderson had claimed on the previously submitted travel voucher minus the $36.75 which had been disallowed.
 
 
 5
 In September 1985, Henderson submitted a travel voucher with an outstanding balance of $348.23, representing $311.48 from prior vouchers plus the $36.75 which had been disallowed previously. Henderson's actual outstanding balance, however, was $1,994.52--this amount included his June 5, 1985 advance of $1,425.00 and his previous balance of $569.52. On travel vouchers submitted for October and December 1985, Henderson reported an outstanding balance of $348.23 and $348.43, respectively. During the months of January through May 1986, Henderson claimed an outstanding balance of $348.43.
 
 
 6
 On June 25, 1986, Henderson's Group Manager, Richard Bright ("Bright"), instructed him to pay down his outstanding balance to $250.00. Fiscal Management then sent Henderson a June 30, 1986 letter, which indicated that he had an outstanding balance of $1,994.52. Although Henderson did not answer because he was out on sick leave, Bright responded to Fiscal Management that Henderson had an outstanding balance of $348.43. On July 1, 1986, Henderson submitted a voucher claiming an outstanding balance of $348.43 and that $98.43 was to be applied to that amount, thus reducing his debt to IRS to $250.00. Henderson actually owed IRS $1,876.09.
 
 
 7
 Inspector Francille R. Diaab ("Inspector Diaab"), IRS Inspection Division, contacted Bright on September 10, 1986 and informed him that Henderson was under investigation due to the large discrepancies in his travel vouchers. On November 6, 1986, Inspector Diaab made an appointment to interview Henderson.
 
 
 8
 On November 10, 1986, Inspector Diaab and his Group Manager, Inspector Cornelius Jackson ("Inspector Jackson") (collectively "the Inspectors"), visited Henderson at his home. Inspector Diaab initially read Henderson his rights, pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). Before Inspector Diaab began the interview, Henderson executed two forms: a "Waiver of Right to Remain Silent and of Right to Advice of Counsel" and an "Employee Notification Regarding Union Representation." Henderson subsequently discussed his travel voucher discrepancies with the Inspectors.
 
 B.
 
 9
 On March 12, 1987, Henderson was indicted on thirteen counts in the Western District of Michigan. Count 1 charged Henderson with unlawful conversion of a United States Treasury check over $100.00, in violation of 18 U.S.C. Sec. 641. Counts 2 through 13 charged Henderson with making false statements on IRS vouchers, in violation of 18 U.S.C. Sec. 1001.
 
 
 10
 At a pre-trial hearing, the United States sought to introduce the Inspectors' testimony concerning Henderson's November 10, 1986 statements. Defense counsel objected, contending that Henderson's statements should be suppressed because the Inspectors conducted an impermissible custodial interrogation. The district court ruled that there was no custodial interrogation; thus, the United States was permitted to admit Henderson's statements.
 
 
 11
 At the trial, Inspector Diaab testified that before Henderson was placed under investigation, he was warned by his supervisors, on numerous occasions, to be "more accurate" when preparing his travel vouchers. Inspector Diaab continued that even though IRS auditors disallowed several of Henderson's earlier vouchers, he refused to conform his later vouchers to IRS standards. Inspector Diaab testified that his November 10, 1986 interview with Henderson focused on the United States' Exhibit No. 4c, the travel advance check for $1,388.25, which Henderson had received on August 26, 1985. At trial, Inspector Diaab recalled:
 
 
 12
 Basically, the interview ... was concentrated around Exhibit No. 4c. Mr. Henderson ... failed to remember that he had in fact received that check. At that point I asked him what had happened to it. Mr. Henderson stated that it was in a bank account. I responded: "Fine. Give me a check for the amount of Exhibit No. 4c. We don't have an investigation," and, quote, unquote, "I will be out of your life."
 
 
 13
 Mr. Henderson then responded: "No, I don't have a check. The money is in the bank." I then asked Mr. Henderson again what happened to the check. He then tells me that he had sent the check and the letter back to Fiscal Management Branch in Cincinnati advising them that he was not entitled to that money, and he was issued another check from Fiscal Management Branch.
 
 
 14
 I think I have a log at that time of checks that had been dispensed to him for probably over two years period of time and advised him that there was only one check cut in the dollar amount totaling Exhibit No. 4c and that was the one which he had signed. Mr. Henderson then said: "No, I didn't send the check. I sent a letter to Fiscal Management Branch telling them that I was, although I can't remember the particulars." He then said Fiscal Management responded to him and advis[ed] him that he was entitled to that check.
 
 
 15
 Mr. Henderson then stopped and paused, and then said: "I think I need help. I think I need a union representative."
 
 
 16
 At that point Mr. Jackson and myself gathered our belongings, stopped the interview, proceeded to leave, and before even standing up, Mr. Henderson said, no, I want to clear up this matter. I can't remember the exact words. Mr. Jackson responded: "Does that mean that you want to continue with the interview?" To which Mr. Henderson responded yes.
 
 
 17
 At that point Mr. Henderson went on to say that he had cashed the check, he had used it for some personal bills [sic].
 
 
 18
 Joint Appendix at 138-39 (quoting United States v. Henderson, No. G87-21CR (W.D. Mich. Sept. 15, 1987) (trial transcript)).
 
 
 19
 At trial, defense counsel also sought to introduce Defense Exhibit B. This document allegedly indicated that Henderson applied a sum of $1425.00 to the outstanding balance on his travel voucher, but Larry Miller ("Miller"), his IRS Trainer, told him to remove the figure. The district court ruled that under Federal Rule of Evidence 1003, Defense Exhibit B was an untrustworthy photocopy; and thus, inadmissible. In addition, defense counsel unsuccessfully contended that the district court impermissibly assumed the role of an advocate during the trial.
 
 
 20
 On July 31, 1987, after a four day jury trial, Henderson was found guilty on all counts. He received a suspended sentence of five years imprisonment, on the conditions that he spend 179 days in a local jail facility and serve three years on probation. The judgment and commitment order of the district court was filed on September 15, 1987. On September 21, 1987, Henderson filed a timely notice of appeal with this court.
 
 II.
 A.
 
 21
 On appeal, Henderson contends that he was prejudiced by the district court's evidentiary ruling excluding Defense Exhibit B as untrustworthy. Henderson claims that Defense Exhibit B is a copy of a travel voucher, dated August 7, 1985, which he submitted to Miller. Henderson maintains that the voucher indicated that he had applied $1,425.00 to his outstanding balance. Miller, however, told him that he had filled out the voucher incorrectly and that he should not have included the $1,425.00 figure. Henderson alleges that he then completed a second voucher, which became the United States' Exhibit 4a. The second voucher did not contain the $1,425.00 figure.
 
 
 22
 Henderson argues that the exclusion of Defense Exhibit B was reversible error because: first, Defense Exhibit B was critical to his claim that he acted in good faith to account for the missing $1,425.00; second, he never alleged that Defense Exhibit B was a copy of United States' Exhibit 4a, but that it was a copy of an unrelated voucher that Miller told him had been filled out incorrectly; third, Defense Exhibit B was authenticated by his testimony as a witness with knowledge, pursuant to Federal Rule of Evidence 901; and fourth, because Henderson acted in good faith, Defense Exhibit B should have been admitted as an authenticated duplicate, pursuant to Federal Rule of Evidence 1003. We agree with Henderson that Defense Exhibit B should not have been excluded. We conclude, however, that the improper exclusion was harmless error. See United States v. Gibson, 675 F.2d 825, 833 (6th Cir.1982), cert. denied, 459 U.S. 972 (1982).
 
 
 23
 We are persuaded that the district court's error was harmless beyond a reasonable doubt and that it did not affect Henderson's substantive rights. If Defense Exhibit B had been admitted into evidence, then the jury merely would have been made aware of Henderson's effort to account for the missing $1,425.00 on his travel voucher. Henderson presented no evidence that he had paid restitution or accounted for the missing funds in fact. Thus, Defense Exhibit B had only minor "incremental probity." United States v. Beechum, 582 F.2d 898, 914 (5th Cir.1978), cert. denied, 440 U.S. 920 (1979). Moreover, Defense Exhibit B would not have undermined the probative value of Henderson's November 10, 1986 statements that he had converted the United States Treasury check to personal use so that he could pay his bills. We conclude that if the jury had reviewed Defense Exhibit B, its verdict would not have been different. See United States v. Gibson, 675 F.2d at 834; United States v. Chason, 451 F.2d 301, 305-06 (2d Cir.1971), cert. denied, 405 U.S. 1016 (1972).
 
 B.
 
 24
 Henderson next argues that he was subjected to an impermissibly coercive custodial interrogation and that the district court erred by denying his motion to suppress his November 10, 1986 statements. The United States responds that Henderson was not subjected to a custodial interrogation; thus, the district court did not err in admitting his November 10, 1986 statements to the Inspectors. We agree.
 
 
 25
 In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court held that when an individual is "subjected to custodial police interrogation," he must receive full warnings of his constitutional rights before any statements may be obtained from him. See id. at 439 (emphasis added). In Beckwith v. United States, 425 U.S. 341 (1976), the Court explained that the Miranda requirements apply to interviews with IRS Inspectors concerning criminal tax liability, but only "when the subject is in custody." Id. at 347. In Beckwith, the petitioner and his tax records were the "focus" of the investigation. Petitioner, however, was not the "focus" for Miranda purposes, which involves " 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' " Beckwith, 425 U.S. at 347 (quoting Miranda, 384 U.S. at 444). Thus, the Beckwith Court concluded that because petitioner was not placed under arrest nor subjected to custodial interrogation, his statements made to IRS Inspectors at a private home were admissible, even though he did not receive full Miranda warnings. See id. at 348.
 
 
 26
 Like the petitioner in Beckwith, Henderson was not subjected to custodial interrogation during his November 10, 1986 interview with the Inspectors. First, Henderson failed to prove that the Inspectors placed him under arrest or restrained his freedom of movement in any way. Thus, his assertion that he was coerced is insufficient evidence for this court to deem the interview a custodial interrogation. See Oregon v. Mathiason, 429 U.S. 492, 495 (1977) ("[A] noncustodial situation is not converted into one in which Miranda applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a 'coercive environment.' ") (citations omitted). Second, during his interview with the Inspectors, Henderson remained in his own home. He was free to leave; to move about; and at one point, he even requested that the questioning stop. To honor his request, the Inspectors rose to leave his home. Henderson, however, then asked that the interview continue. Thus, Henderson could not be deemed "in custody" when he could have chosen to end the interview, but voluntarily chose to continue to cooperate with the Inspectors. Cf. United States v. Mesor, 638 F.2d 582, 587 (3rd Cir.1980) ("[W]hen the police have a suspect within their immediate control, the proper inquiry to determine whether he is in 'custody' is not to ask if he was at the police station, but to ask if he was free to leave.").
 
 
 27
 Even assuming, arguendo, that Henderson established that there had been a custodial interrogation to justify his suppression motion, he would still remain unable to show a violation of his Miranda rights. Henderson, a college graduate and former U.S. Navy officer, voluntarily, knowingly and intelligently executed waivers of his rights to union representation; to counsel; and to remain silent. See Oregon v. Elstad, 470 U.S. 298, 315-17 (1985). He subsequently made several incriminating statements to the Inspectors concerning his travel voucher discrepancies. Under these circumstances, the district court correctly concluded that Henderson's Miranda rights were not violated. Thus, Henderson's November 10, 1976 statements to the Inspectors were properly admitted into evidence.
 
 C.
 
 28
 Henderson also argues that he was prejudiced by the district court's interrogation of the witnesses and comments upon the evidence. We find Henderson's arguments unpersuasive. Federal Rule of Evidence 614 allows the court to "interrogate witnesses, whether called by itself or by a party." See United States v. Carabbia, 381 F.2d 133, 139 (6th Cir.) (concluding that the trial judge has a right to interrogate witnesses to prevent testimony from being misunderstood), cert. denied, 389 U.S. 1007 (1967). Given the complexity of Henderson's travel voucher transactions with Fiscal Management, the district court properly questioned Henderson to clarify the issues before the jury. See United States v. Hickman, 592 F.2d 931, 933 (6th Cir.1979). Moreover, when defense counsel questioned Henderson about the Inspectors' offer allowing him to pay restitution to avoid prosecution, the court justifiably imposed clarifying comments and questions to prevent defense counsel from pursuing an irrelevant line of questioning. See United States v. Frazier, 584 F.2d 790, 793 (6th Cir.1978); United States v. Burch, 471 F.2d 1314, 1317-18 (6th Cir.1973).
 
 
 29
 At the conclusion of the trial, the district court commented on its questioning of the witnesses and gave the following instructions to the jury:
 
 
 30
 You should not assume from anything that I may have said that I have any opinion concerning any of the issues in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision concerning the facts that are in dispute in this case.
 
 
 31
 Joint Appendix at 202 (quoting United States v. Henderson, No. G87-21CR (W.D.Mich. Sept. 15, 1987) (trial transcript)). If any prejudice resulted from the district court's comments or questions to witnesses, such prejudice was cured by these strong instructions. See United States v. Smith, 831 F.2d 657, 664 (6th Cir.1987) (finding no reversible error where district court instructed jury to disregard its previous interrogation of a witness), cert. denied, 484 U.S. 1072 (1988). Because the district court did not assume the role of an advocate in questioning the witnesses or commenting on the evidence, we find no error warranting reversal.
 
 
 32
 For the reasons stated herein, the judgment and commitment order of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior U.S. District Judge for the Eastern District of Michigan, sitting by designation